UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY GRAZIANO,                    )
                                     )
          Plaintiff,                 )
                                     )
     v.                              ) Civil Action No. 06-36 RCL
                                     )
FEDERAL BUREAU OF                    )
  INVESTIGATION, <u>et al.</u>,      )
                                     )
          Defendants.                )
                                     )

**DEFENDANTS' MOTION TO DISMISS OR,**
**IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 12(b)(1) and (6), the moving Defendants[1] hereby move to dismiss this action.  In the alternative, the Court is asked to enter summary judgment in favor of the moving Defendants, pursuant to Fed. R. Civ. P. 56, because there is no genuine issue as to any material fact and the Defendants is entitled to judgment as a matter of law.[2]  The

_____

[1]  The moving defendants include all Defendants except the Federal Bureau of Investigation, which will file a separate Motion To Dismiss In Part Or, In The Alternative, For Partial Summary Judgment.

[2]  To the extent that the Court may rely on matters outside of the pleadings, the Court may enter summary judgment in favor of the defendant.  <u>See</u> Fed. R. Civ. P. 12(b); 56.  Plaintiff should take notice that any factual assertions contained in the documents in support of this motion may be accepted by the Court as true unless the plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in the documents.  <u>See</u> <u>Neal</u> v. <u>Kelly</u>, 963 F.2d 453, 456-57 (D.C. Cir. 1992), Local Rule 7(h); 56.1 and Fed. R. Civ. P. 56(e), which provides as follows:

     Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively

Court is respectfully referred to the accompanying memorandum and to the statement of material facts accompanying this motion.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, DC Bar #451058
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

---

that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY GRAZIANO,               )
                                )
          Plaintiff,            )
                                )
     v.                         )  Civil Action No. 06-36 RCL
                                )
FEDERAL BUREAU OF               )
  INVESTIGATION, <u>et</u> <u>al.,</u>        )
                                )
          Defendants.           )
_____)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

### INTRODUCTION

This case arises under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act of 1974 (PA), 5 U.S.C. § 552a, and pertains to the processing of Plaintiff's FOIA/Privacy Act request to the Drug Enforcement Agency (DEA), Interpol - U.S. National Central Bureau (USNCB), Bureau of Prisons (BOP), Department of Justice, Criminal Division (Criminal), Executive Office for United States Attorneys (EOUSA), National Security Agency (NSA), Central Intelligence Agency (CIA), United States Postal Service (USPS), United States Marshals Service (USMS), United States Secret Service (USSS), United States Customs and Border Protection (CBP), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Department of Justice, Tax Division (TAX), and Internal Revenue Service (IRS). All of these defendants have complied with the requirements of FOIA in responding to plaintiff's requests.

Specifically, defendants NSA, CIA, USSS, and CBP found no records.  The declarations of Louis F. Giles, Director of Policy for the National Security Agency (Giles Decl.), Scott A. Koch, Chief of the Public Information Programs Division, Information Management Services, Central Intelligence Agency (Koch Decl.), Mark Sullivan, Deputy Director of the United States Secret Service, Department of Homeland Security (Sullivan Decl.), Dorothy Pullo, Supervisory Program Analyst, TECS/FOIA Customer Satisfaction Unit, Office of Field Operations, United States Customs and Border Protection (Pullo Decl.) and Shari Suzuki, Chief, FOIA Appeals, Policy and Litigation Branch, Rulings and Disclosure Law Division, Office of Regulations and Rulings, United States Customs and Border Protection (Suzuki Decl.) each describe the scope of their respective searches and the bases of their findings of no responsive records.

Defendants USNCB, ATF, BOP, Criminal Division, Tax, DEA, EOUSA, USMS, USPS, and IRS found responsive records. The declarations of Dorothy S. Beaty, Freedom of Information and Privacy Acts Specialist, Interpol - U.S. National Central Bureau (Beaty Decl.); Averill P. Graham, Chief, Disclosure Division, Bureau of Alcohol, Tobacco, Firearms and Explosives (Graham Decl.) and Johnny D. Rosner, Acting Chief, Disclosure Division, Bureau of Alcohol, Tobacco, Firearms and Explosives (Rosner Decl.); Karen Summers, Paralegal Specialist, Federal Bureau of

Prisons, South Central Regional Office (Summers Decl.); Kathy
Hsu, Attorney, Criminal Division, Office of Enforcement
Operations (Hsu Decl.); J. Brian Ferrel, Senior Division Counsel,
Civil Trial Section, Eastern Region of the Tax Division (Ferrel
Decl.); Leila I. Wassom, Paralegal Specialist, Office of the
Chief Counsel, Administrative Law Section Drug Enforcement
Administration (Wassom Decl.); John W. Kornmeier, Attorney
Advisor, Executive Office for United States Attorneys (Kornmeier
Decl.); William E. Bordley, Associate General Counsel and Freedom
of Information/Privacy Act Officer, Office of General Counsel
(Bordley Decl.); United States Marshals Service; and Lynne
Freeman, Information Disclosure Technician, Office of Counsel for
the Postal Inspection Service (Freeman Decl.) explain the scope
of their respective searches and the appropriateness of the
exemptions applied.  Each defendant released all non-exempt
documents or portions thereof making every effort to provide
plaintiff with all reasonably segregated portions of releasable
material.  Accordingly, plaintiff's claims against defendants
NSA, CIA, USSS, CBP, USNCB, ATF, BOP, Criminal Division, Tax,
DEA, EOUSA, USMS, USPS, and IRS should be summarily dismissed.

## I. <u>STATEMENT OF FACTS</u>

Defendants incorporate herein as its Statement of Facts the
Statement of Material Facts Not in Genuine Dispute attached
hereto.

## II. ARGUMENT

### A    Standard for Summary Judgment

In a FOIA/PA action, summary judgment is appropriate when, as here, the pleadings, together with the declarations, demonstrate that "there is no genuine issue as to any material fact and...the moving party is entitled to judgment as a matter of law." Washington Post Co. v. U.S. Dept. of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989).  As the Supreme Court has declared, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

An agency satisfies the summary judgment requirements in a FOIA or Privacy Act case by showing that each document was produced, not withheld, is unidentifiable, or is exempt from disclosure.  Weisberg v. U. S. Dept. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).  To meet its burden, the defendant may rely on affidavits or declarations and other evidence by the agency which show that the documents are exempt from disclosure.[1]

---

[1] For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to de novo review by the courts.  Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381,. 1984, 1386 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980).

Summary judgment may be awarded to an agency in a FOIA or Privacy Act case solely on the basis of agency affidavits or declarations if the "affidavits are 'relatively detailed, non-conclusory, and not impugned' by evidence ... of bad faith on the part of the agency." Public Citizen, Inc. v. Dept. of State, 100 F.Supp.2d 10, 16 (D.D.C. 2000) (quoting McGhee v. Central Intelligence Agency, 697 F.2d 1095, 1102 (D.C. Cir. 1983). Once the Court determines that the declarations are sufficient, it need not inquire further. Students Against Genocide v. Department of State, 257 F.3d 828, 833 (D.C. Cir. 2001).

Because defendants here have released all non-exempt responsive documents at issue, plaintiff's Complaint here should be summarily dismissed.

## B.    **Plaintiff Has Failed To Exhaust His Administrative Remedies With Regard To EOUSA's Request Nos. 05-2168 and 05-2169**

It is well-established in administrative law that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." McKart v. U.S., 395 U.S. 185, 193 (1969). Exhaustion of such administrative remedies is required under FOIA before a party can seek judicial review. Dettmann v. U.S. Dept. of Justice, 802 F.2d 1472, 1477 (D.C. Cir. 1986). A FOIA requester is deemed to have failed to exhaust administrative remedies whenever the requester fails to comply with the administrative procedures set forth under FOIA, including: (1) providing the required proof of

-5-

identity, <u>Summers v. U.S. Dept. of Justice</u>, 999 F.2d 570, 572-73 (D.C. Cir. 1993); (2) reasonably describing the records sought, <u>Gillin v. I.R.S.</u>, 980 F.2d 819, 822-23 (1st Cir. 1992);   (3) complying with fee requirements, <u>Trueblood v. U.S. Dept. of Treasury, I.R.S.</u>, 943 F. Supp. 64, 68 (D.D.C. 1996); and (4) administratively appealing a denial of records, <u>Oglesby v. U.S. Dept. of Army</u>, 920 F.2d 57 (D.C.Cir. 1990).  Where a FOIA plaintiff attempts to obtain judicial review without having first fully exhausted his administrative remedies, his lawsuit is subject to dismissal for lack of subject matter jurisdiction. <u>Id</u>.

FOIA requires agencies to establish fee schedules for the time taken to search for records and for the cost of copying records.  <u>See</u> 5 U.S.C. §552(a)(4)(A)(i); 28 C.F.R. § 16.11 (DOJ regulation implementing this provision).  Agencies may request advance payment of fees upon a determination that the fees will exceed $250.00.  <u>See</u> 5 U.S.C. §552(a)(4)(A)(v).  In such cases, the agency may insist on advance payment of fees "before beginning to process the request."  28 C.F.R. 16.11(i)(2).  An agency may require payment of fees even if the FOIA request has become the subject of litigation.  <u>See</u>, <u>e.g.</u>, <u>Trueblood v. U.S. Dept. of Treasury, I.R.S.</u>, 943 F. Supp. 64, 68 (D.D.C. 1996) (failure to pay fees is a jurisdictional defense that can be raised at any time); <u>see also</u> <u>Pollack v. Department of Justice</u>,

49 F.3d 115, 119-20 (4th Cir. 1995).

As demonstrated below, plaintiff has failed to exhaust his administrative remedies with respect to EOUSA.

Pursuant to the requirements of the FOIA, DOJ has promulgated comprehensive regulations, set forth at 28 C.F.R. §§ 16.1 *et seq.*, governing the procedures requesters must follow in making FOIA requests to DOJ components, as well as procedures components must follow in responding to such requests. <u>See</u> 5 U.S.C. § 552(a)(1)(A).

Under DOJ's regulations, FOIA requests "should be sent" to the DOJ component maintaining the requested records, at the "component's central FOIA office." 28 C.F.R. § 16.3(a). Requesters who are unsure of the components to which their requests should be sent are directed to write to the Justice Management Division (JMD) for assistance. <u>Id</u>. Under DOJ regulations a "request will be considered received as of the date it is received by the proper component's FOIA office." <u>Id</u>.; <u>see also</u> <u>Brumley</u>, 767 F.2d at 445. Once a FOIA request is properly received, the FOIA requires that the agency (or component thereof) respond to that request within 30 days. <u>See</u> 5 U.S.C. § 552(a)(6)(i); 28 C.F.R. § 16.6(b). A requester may file when he/she is unhappy with the agency's determination or the agency has not responded within the statutorily established deadlines. By letter dated February 14, 2006, EOUSA notified plaintiff that

-7-

it had determined that the fees were at least $868.00 and required an advance payment. Kornmeier Decl. ¶ 6. EOUSA also gave plaintiff another opportunity to reformulate his request to reduce fees. Id. EOUSA told plaintiff that in accordance with 28 C.F.R. § 16.11(i), his request is not considered received until it received a response from him and that unless it heard from him in thirty days of the date of the letter, the matter would be closed. Id. ¶ 6, and Exhibit B.

By refusing to comply with EOUSA's regulations regarding advanced payment of fees, plaintiff failed to exhaust his administrative remedies. Mr. Graziano did not send the requested fee within the required thirty day time period nor did he respond with a reply to reformulate his request to reduce fees. EOUSA is accordingly closing requests 05-2168 and 05-2169. Kornmeier Decl. ¶ 7.

## C.    **Defendants Have Submitted Proper "Vaughn" Indices**

In moving for summary judgment in a FOIA case, agencies must establish a proper basis for their withholding of responsive documents. "In response to this special aspect of summary judgment in the FOIA context, agencies regularly submit affidavits . . . in support of their motions for summary judgment against FOIA Plaintiffs." Judicial Watch, Inc. v. U.S. Dept. of Health and Human Services, 27 F. Supp. 2d 240, 242 (D.D.C. 1998). These declarations or affidavits (singly or collectively) are

often referred to as a Vaughn index, after the case of Vaughn v.
Rosen, 484 F.2d 820 (D.C.Cir. 1973), cert. denied, 415 U.S. 977,
94 S.Ct. 1564 (1974).  There is no set formula for a Vaughn
index.  "[I]t is well established that the critical elements of
the Vaughn index lie in its function, and not in its form."  Kay
v. F.C.C., 976 F.Supp. 23, 35 (D.D.C. 1997).  "The materials
provided by the agency may take any form so long as they give the
reviewing court a reasonable basis to evaluate the claim of
privilege."  Delaney, Midgail & Young, Chartered v. I.R.S., 826
F.2d 124, 128 (D.C.Cir. 1987).  See also Keys v. U.S. Dept. of
Justice, 830 F.2d 337, 349 (D.C.Cir. 1987); Hinton v. Department
of Justice, 844 F.2d 126, 129 (3rd Cir. 1988).[2]

The Vaughn Index serves a threefold purpose: (1) it
identifies each document withheld; (2) it states the statutory
exemption claimed; and (3) it explains how disclosure would
damage the interests protected by the claimed exemption.  See
Citizens Com'n on Human Rights v. Food and Drug Admin., 45 F.3d
1325, 1326 (9th Cir. 1995).  "Of course the explanation of the
exemption claim and the descriptions of withheld material need

---

[2] "All that is required, and that is the least that is required, is
that the requester and the trial judge be able to derive from the
index a clear explanation of why each document or portion of a
document withheld is putatively exempt from disclosure."  Id.  "The
degree of specificity of itemization, justification, and correlation
required in a particular case will, however, depend on the nature of
the document at issue and the particular exemption asserted."
Information Acquisition Corp. v. Department of Justice, 444 F.Supp.
458, 462 (D.D.C. 1978).

not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology of Washington, D.C., Inc. v. Bell, 603 F.2d 945, 949 (D.C.Cir. 1979).

Here, USNCB, ATF, BOP, Criminal, Tax, DEA, EOUSA, USMS, USPS, and IRS have submitted supporting declarations and/or separate Vaughn index in support of the exemptions taken. Each agency declaration was prepared by an individual familiar with the handling of the direct or referred request.

The declarations submitted in support of this motion meet the requirements of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564 (1974), and provide the Court with the requisite basis to grant Defendants' motion.

**D.   Defendants Conducted A Reasonable Search for Records**

All defendants performed reasonable searches in response to plaintiff's FOIA request. In responding to a FOIA request an agency is under a duty to conduct no more than a reasonable search for responsive records. Ogelsby v. U.S. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Cleary, Gottlieb, Steen & Hamilton v. Department of Health and Human Services, 844 F.Supp. 770, 776 (D.D.C. 1993).

The search standards under the FOIA do not place upon the

agency a requirement that it prove that all responsive documents have been located.  Nation Magazine, Washington Bureau v. U.S. Customs Service, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).  It has been held that "the search need only be reasonable; it does not have to exhaustive."  Miller v. U.S. Dept. of State, 779 F.2d 1378, 1383 (8th Cir. 1985) citing, National Cable Television Ass'n, Inc. v. F.C.C., 479 F.2d 183, 186 (D.C.Cir. 1973).  As a result, an agency under the FOIA is not required to search every division or field office in response to a FOIA request when responsive documents are likely to be located in one place. Marks v. U.S. (Dept. of Justice), 578 F.2d 261, 263 (9th Cir. 1978).  The agency is not obligated to perform an "open-ended, broad based, and ill-defined" search of every division and office.  See, Marrera v. U.S. Dept. of Justice, 622 F.Supp. 51, 54 (D.D.C. 1985).

Even when a requested document indisputable exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent. Nation Magazine, 71 F.3d at 892 n.7.  Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it.  Maynard v. C.I.A., 986 F.2d 547, (1st Cir. 1993).  Simply stated, the adequacy of the search is "dependent upon the circumstances of the case."  Truitt

v. Department of State, 897 F.2d 540, 542 (D.C. Cir. 1990).

**E.    NSA, CIA, USSS, and CBP  Found No Responsive Documents**

**1.    The NSA Conducted a Reasonable Search**

By letter dated June 11, 2005, plaintiff filed a FOIA request, which was forwarded to the Office of Policy on June 14, 2005.  Plaintiff requested all records on himself, in anyway connected to, related to, or even remotely in reference to his name from the NSA.  Giles Decl. ¶ 5, and Exhibits 1,2.

The FOIA staff conducted a thorough search of the Agency's personnel, security, and training computer database systems (all Agency databases where there would reasonably be any record, if such existed), searching for information on Anthony Graziano and the social security number provided in the request. No responsive records were located.  Id. ¶ 9.

NSA undertook an adequate search in response to Plaintiff's FOIA Request and has met its burden under the FOIA.

**2.    CIA Conducted a Reasonable Search**

Plaintiff submitted a written FOIA/Privacy Act request to CIA dated June 11, 2005.  In his request, plaintiff asked for all records relating to the following name: Anthony Graziano.  Koch Decl. ¶ 16, and Exhibit 1.  The CIA Information and Privacy Coordinator in the Information Management Services (IMS) is the initial reception point for all FOIA/Privacy Act requests.  Under the direction and supervision of the CIA Information and Privacy

-12-

Coordinator, experienced IMS information management professionals analyze each request and determine which CIA components might reasonably be expected to possess records responsive to a particular request.  IMS then transmits a copy of the request to each relevant component.  When a request is broad, it is quite common for IMS to transmit the request to many components. Because CIA's records systems are decentralized and compartmented, each component must then devise its own search strategy, which includes identifying which of its records systems to search as well as what search tools, indices, and terms to employ.  The information management professionals in each component conducting FOIA/Privacy Act searches are the same professional searching records to support the component's daily mission.  Id. ¶ 10.

After a tasked component locates documents in response to the FOIA/Privacy Act request, officers must review the documents to determine whether they are responsive to the request.  Because of the nature of a particular records system, or the search tools, indices, or terms employed, a search may locate many documents that are not responsive to the request.  Id. ¶ 11.

When all of the components and agencies complete their respective reviews, IMS professionals, under direct supervision, incorporate all of their recommendations regarding exemption, segregation, redaction, and release.  These IMS professionals

-13-

then conduct a review from a corporate perspective on behalf of the entire CIA.  In this review, IMS professionals resolve conflicting recommendations, ensure that the release or withholding determinations comply with law and published CIA regulations, identify additional exempt information that reflects overall CIA equities, ultimately produce the integrated final record copy of each document, and respond to the requestor.  Id. ¶ 14.  CIA processed plaintiff's request in accordance with agency procedures and failed to disclose any records.  Id. ¶ 18.

CIA undertook an adequate search in response to Plaintiff's FOIA Request and has met its burden under the FOIA.

### 3.    USSS Conducted a Reasonable Search

By letter dated June 11, 2005, and received by the Secret Service FOI/PA office on July 14, 2005, plaintiff submitted to the Secret Service a FOI/PA request.  Plaintiff's request was for all records maintained by the Secret Service concerning himself.  Sullivan Decl. ¶ 4, and Exhibit A.  Pursuant to plaintiff's request, the FOI/PA Office conducted a search for responsive information.  In order to conduct this search, the Secret Service FOI/PA Office first conducted searches for plaintiff's name, social security number, and date of birth on the Secret Service's Master Central Index (MCI).  Id. ¶ 5.

The MCI system is an on-line computer system used by all Secret Service field offices, resident offices, resident

-14-

agencies, protective divisions, and headquarters divisions for a variety of applications.  The MCI provides a system of record keeping of information for cases and subjects of record in investigative, protective, and administrative files maintained by the Secret Service.  Individuals on whom the Secret Service maintains records are indexed when possible on MCI by name, social security number, and/or date of birth.  Business or other entities on whom the Secret Service maintains information are indexed on MCI by business or entity name.  Id. ¶ 6.

Pursuant to its standard practice, the FOI/PA Office also forwarded a request to search for records concerning plaintiff to the Secret Service's Investigative Support Division (ISD).  The ISD maintains copies of criminal investigative case files.  The ISD also conducted an MCI search for records concerning plaintiff.  Id. ¶ 7.

The MCI searched produced no reference to the name "Anthony Graziano."  Based on these searches the FOI/PA Office determined that it could locate no records responsive to plaintiff's FOI/PA request.  Id. ¶¶ 8,9.

USSS undertook an adequate search in response to Plaintiff's FOIA Request and has met its burden under the FOIA.

### 4.    <u>CBP Conducted a Reasonable Search</u>

On or about January 30, 2006, Ms. Pullo reviewed the Office of Field Operations case tracking system for a TECS/FOIA request

-15-

filed by Plaintiff as part of the CBP response to the above-
captioned complaint.  When a FOIA request is received by CBP,
staffers log the request into the Office of Field Operations case
tracking system, along with relevant information, which includes
the identity of the requester.  The case tracking system
maintained by CBP is the sole automated means by which CBP would
locate FOIA requests referred to CBP by members of the public or
other government agencies.  There was no record that appeared in
this record system concerning any FOIA request by plaintiff made
directly to the U.S. Customs Service (now CBP) or referred to CBP
by another agency.  Pullo Decl. ¶ 3.

On or about January 30, 2006, Ms. Suzuki reviewed the ORR
Legal Case Inventory System (LCIS) for a FOIA appeal filed by
plaintiff as part of the CBP response to the complaint.  LCIS is
an electronic case tracking system which tracks, among other
types of cases, FOIA appeal cases. When a FOIA appeal is received
by CBP, staffers logs the appeal into LCIS along with relevant
information including the name of the requester.  LCIS is
searchable by the name of the requester. LCIS is the sole
electronic system by which CBP would locate FOIA appeals
submitted to CBP by members of the public.  LCIS was searched
based on the name of the requester.  There was no record that
appeared in this system concerning any FOIA appeal by plaintiff.
Suzuki Decl. ¶ 4.

CBP undertook an adequate search in response to Plaintiff's FOIA Request and has met its burden under the FOIA.

## F.    USNCB, ATF, BOP, Criminal, Tax, DEA, EOUSA, USMS, USPS, and IRS Found Responsive Documents and Released All Responsive, Non-Exempt Records

### 1.    USNCB's Search For Responsive Documents Was Reasonable

By letter dated June 11, 2005 to the Department of Justice (DOJ), Interpol-U.S. National Central Bureau, the plaintiff asked to receive a copy of any and all documents, records and information that any part of our agency has or had n its possession that is in any way connected to, related to, or even remotely in reference to his name.  This request was received on July 14, 2005.  Beatty Decl. ¶ 7.

The USNCB system of records consists of electronic and hard copy records of criminal and non-criminal case files which support the law enforcement and humanitarian functions performed by the USNCB.  The files contain records of facsimiles, fingerprints, photographs, criminal investigative reports, applicant checks related to law enforcement and non-law enforcement employment, security and regulatory matters, licenses, grants, contracts, or benefits, and related data, radio messages (international), log sheets, notices, bulletins or posters, lookouts (temporary and permanent notices including identification information on an individual or item of interest

-17-

to law enforcement authorities), investigative notes, computer printouts, letters, memoranda, witness statements and records related to deceased persons.  Information about individuals includes names, aliases, places and dates of birth, addresses, physical descriptions, various identification numbers, reason for the records or lookouts, and details and circumstances surrounding the actual or suspected violations, humanitarian requests or administrative/ operational matters.  Id. ¶ 2.

In addition to the USNCB system of records, the USNCB maintains administrative files consisting of non-investigative topical files of hard copies of records and correspondence; for example, files of FOIA requests and responses, records of litigation documents, and documents related to various policy issues.  These two sources, namely, the USNCB system of records and administrative files were the sources of information searched for information which could be responsive to the plaintiff's request.  Id. ¶ 3.

When FOIA/PA requests are received, USNCB's system of records is queried using the name of the subject as the basis for the search, and if appropriate, any other identifying information, such as a date of birth, place of birth and social security number of the subject, if provided by the requester or otherwise known.  In addition to querying the USNCB system of records, a search is performed of the USNCB administrative files.

A physical search of the USNCB administrative files is conducted by reviewing the index of all the files maintained and stored in five (5), five-drawer legal file cabinets.  Id. ¶¶ 4,5.

No responsive documents or records were located in the administrative files, however, there was on electronic file consisting of five pages which was identifiable with the plaintiff's name.  None of the pages were responsive to the plaintiff's request.  In searching the case summary of this file, it was ascertained that this was a master file which had reference to his name, along with the names of multiple crime organizations and other individuals.  After seeking guidance from OIP on July 15, 2005, it was determined there were no records.  Therefore, a "no records" letter was sent to the plaintiff on July 15, 2005.  Id. ¶ 9, and Exhibits A,B.

The file was reviewed again, and copies made of its contents on September 29, 2005.  A supplemental release of the first and seventh page of the 15-page printout, removing the page numbers and the web address under Exemption (b)(2) and the third-party information under (b)(7)(C).  USNCB sent a letter to the plaintiff on September 30, 2005, along with the supplemental release.  Id. ¶ 10, and Exhibit B.

The USNCB undertook an exhaustive search for records responsive to plaintiff's FOIA request.  The search resulted in the location of responsive documents which were provided to

plaintiff.

### 2.   ATF's Search For Responsive Documents Was Reasonable

On July 7, 2005, ATF's Disclosure Division received a FOIA request dated June 11, 2005 from plaintiff, in which he sought all records related to himself.  Graham Decl. ¶ 5, and Exhibit A. Upon receipt of plaintiffs' request, the Disclosure Division executed an independent and thorough search for all responsive material.  The first step in conducting such a search was a query of the Treasury Enforcement Communications Systems ("TECS").[3] TECS is a text-based data, owned and maintained by the Bureau of Customs and Border Protection, U.S. Department of Homeland Security, and contains information that may be of interest to law enforcement agencies.  Id. ¶ 18.

On August 10, 2005, the Disclosure Division made several queries of TECS in an attempt to attain responsive information. Queries were made using the plaintiff's first and last name, as provided in his June 11, 2005 request.  Redacted copies of the results were provided to the plaintiff by ATF's October 14, 2005, release.  Id. ¶ 6.

Redactions were made in the release to plaintiff pursuant to Exemptions (b)(2) and (b)(7)(C) of the FOIA.  Id. ¶ 10.  The only

---

[3]  TECS database is utilized by ATF to locate records within the Criminal Investigation Report System of Records.  See 68 Fed. Reg. 3553.  Graham Decl. ¶ 18.

-20-

investigation record indicated in the TECS query was for a record from the year 1982, specifically case number 441101824001J01, which is associated with ATF's New York Field Division. According to the ATF records schedule, criminal investigations are maintained by ATF for twenty years.  Nontheless, Ms. Graham, requested ATF's New York Field Division to conduct a search in their computer database which contain the case numbers of closed files that were sent to the National Archives and Records Administration (NARA).  The search was conducted and the result was negative.  The New York Field Division also conducted a manual search, which resulted in a negative search.  Lastly, the ATF New York Field Division had no record of any file associated with case number 441101824001J01.  Id. ¶ 19.

     The standard operating procedure would have been for the investigation mentioned in the TECS query to have been destroyed according the records schedule.  According to ATF Order 1345.1 Records Management Program and Records Control Schedule, the destruction schedule is 20 years after the file was opened.  Id. ¶ 20, and Exhibit G.

     The ATF undertook an exhaustive search for records responsive to plaintiff's FOIA request.  The search resulted in the location of one responsive record which was destroyed, but the results of that search were provided to the plaintiff.

     **3.    BOP's Search For Responsive Documents Was Reasonable**

-21-

On or about October 4, 2005, plaintiff's FOIA request dated
June 11, 2005, was received by the BOP's FOIA/PA Section in
Washington, D.C.  The request (2006-00356) was forwarded to the
BOP's South Central Regional Office (SCRO) for response.
Plaintiff sought copies of his Central File, education, medical,
mental health, ISM, and FOIA Exempt section of his Central File,
including investigatory records of the SIS/SIA from FCC Beaumont
and FCC Forrest City.  The request was interpreted as a request
for all records pertaining to him that were maintained in his
Central and Medical Files, SIS records and copies from the FOI
Exempt section of his Central Files at his designated
institution, FCC Forrest City.  Summers Decl. ¶ 4, and Attachment
1.

The BOP processes all requests by individuals (or entities)
for records pertaining to themselves (as in this case) under both
the Freedom of Information and the Privacy Acts in order to
provide the requester the maximum disclosure authorized by law.[4]

On October 19, 2005, FCC Forrest City staff were informed
that plaintiff was directed to request review or copies of the
releasable documents from his Central and Medical Files.  Staff
were instructed to forward all FOI Exempt records maintained in

---

[4]  The BOP's system of records is exempt from the Privacy Act of 1975,
5 U.S.C. § 552a by virtue of subsection (j)(2) of the Act.  See 28
C.F.R. § 16.81 (2000).  Thus, plaintiff's access rights are limited to
those provided by the FOIA.

plaintiff's Central File, as well as records maintained by the SIS/SIA, to the SCRO for review and release determination.[5]  Id. ¶ 6, and Attachment 3.

On December 15, 2005, BOP staff provided plaintiff the opportunity to review and/or receive copies of his Central File records.  Plaintiff signed a receipt indicating he was provided access to his Central File but did not request any copies.  Id. ¶ 7, and Attachment 4.

On February 10, 2006, BOP staff provided plaintiff the opportunity to review and/or receive copies of his psychology records.  Plaintiff signed a receipt indicating he declined to review his psychology records.  Id. ¶ 8, and Attachment 5.

On February 10, 2006, BOP staff provided plaintiff the opportunity to review and/or receive copies of his Medical File records.  Plaintiff signed a receipt but declined to review or obtain copies of his medical records.  Id. ¶ 9, and Attachment 6.

By letter dated November 30, 2005, plaintiff was informed thirty nine (39) responsive documents, maintained in the "FOI Exempt" section of his Central File, were reviewed for release determination.  Id. ¶ 10, and Attachment 7.

A review of thirty nine (39) records revealed seven (7) pages were released in full; twenty three (23) pages were

---

[5] FCC Beaumont and FCC Forrest City staff indicated no SIA/SIS investigatory records were located pertaining to plaintiff.

released with certain information excised pursuant to Title 5 U.S.C. §§ 552a(b)(2), (b)(5), (b)(7)(C), and (b)(7)(F); and nine (9) pages were withheld in their entirety pursuant to Title 5 U.S.C. §§ 552a(b)(2), (b)(7)(C), and (b)(7)(F).  Id. ¶ 11, and Attachment 7.

By letter dated January 6, 2006, plaintiff was provided two (2) of the pages (SENTRY Computerized data) in their entirety and two (2) pages (Statement of Reasons) were available to plaintiff at his current institution.  Id. ¶ 19, and Attachment 10.

The BOP undertook an exhaustive search for records responsive to plaintiff's FOIA requests.  This search resulted in the location of responsive documents which were made available to plaintiff.

**4.  Criminal Division's Search For Responsive Documents Was Reasonable**

By letter dated June 11, 2005, plaintiff made a request to the Department of Justice, Criminal Division's FOIA/PA Unit for records concerning himself.  Although addressed to the Criminal Division, plaintiff's request was forwarded to the Justice Management Division who sent it to the Criminal Division's FOIA/PA Unit.  Hsu Decl. ¶ 4, and Exhibit 1.

In processing requests from individuals seeking information on themselves, the Criminal Division begins by searching its centralized records index, JUSTICE/CRM-001 (Central Criminal Division Index File and Associated Records).  When a search of

this Central Index reflects responsive, or potentially responsive records, a search is sent to the section identified as having custody of the records for such records.  In this instance a search of the JUSTICE/CRM-001 system revealed three index numbers for responsive records.  Id. ¶ 13.

In addition, the Criminal Division also affords the requesters the opportunity to designate specific Privacy Act systems of records to be searched by means of a form listing the Division's systems of records and a short description of the nature of records maintained in each and allowing requesters to designate specific systems to be searched merely by placing a check mark adjacent to the system description.  Here, the plaintiff requested that searches be undertaken of the following Privacy Act systems: JUSTICE/CRM-003 (File of Names Checked to Determine if Those Individuals have been the Subject of an Electronic Surveillance), JUSTICE/CRM-004 (General Litigation and Legal Advice Section, Criminal Division, Central Index File and Associated Records), JUSTICE/CRM-012 (Organized Crime and Racketeering Section, General Index File and Associated Records), JUSTICE/CRM-019 (Requests to the Attorney General for Approval of Applications to Federal Judges for Electronic Interceptions), JUSTICE/CRM-21 (The Stocks and Bonds Intelligence Control Card File System), JUSTICE/CRM-022 (Witness Immunity Records), CRM/JUSTICE-024 (Freedom of Information/ Privacy Act Records),

-25-

and JUSTICE/CRM-025 (Tax Disclosure Index File and Associated Records).  Plaintiff additionally requested a search of the Narcotics and Dangerous Drug Section.  Id. ¶ 14.

By letter dated April 25, 2006, the FOIA/PA Unit responded to plaintiff's Privacy Act request of September 25, 2006, for access to records in his name and informed plaintiff that 26 Criminal Division records (Items 1-26) within the scope of his request were located.  Id. ¶ 11.  These records were located in the Privacy Act system of records: JUSTICE/CRM-001 (Criminal Division Index File and Associated Records),  JUSTICE/CRM-012 (Organized Crime and Racketeering Section, General Index File and Associated Records), JUSTICE/CRM-019 (Requests to the Attorney General for Approval of Application to Federal Judges for Electronic Interceptions), and JUSTICE/CRM-024 (Freedom of Information/Privacy Act Records).  Items 1-2 and 19 were released in full, Items 3-18 and 20-24 were released in part, and items 25-26 withheld in full.  Material was withheld pursuant to Exemptions 3, 5, 6, 7(C) and 7(D) of the FOIA (5 U.S.C. § 552(b)(3), (5), (6), 7(C) and 7(D)).  Id. ¶ 16.

The Criminal Division undertook an exhaustive search for records responsive to plaintiff's FOIA requests.  This search resulted in the location of responsive documents which were provided to plaintiff.

     **5.**    **The TAX Division's Search For Responsive Documents Was Reasonable**

By letter dated June 11, 2005, plaintiff requested all documents on himself.  A search of the indices to the files of the Tax Division was conducted, and five (5) files responsive to the request were located.  In response to the request, plaintiff was advised on September 6, 2005, that thirty-one (31) documents were being released in edited form; and seven (7) documents were being withheld in their entireties.  Ferrel Decl. ¶ 3.

Tax withheld portions of the 31 responsive documents pursuant to Title 5 U.S.C. § 552 (b)(3) in conjunction with 26 U.S.C. § 6103, § 6103(a), (b)(3) in conjunction with Fed. R. Crim. P. 6(e),(b)(5) in conjunction with the attorney work product and deliberative privileges,(b)(7)(C),(b)(7)(E); and seven (7) documents were withheld in their entirety pursuant to Title 5 U.S.C. § 552 (b)(3) in conjunction with 26 U.S.C. § 6103, § 6103(a),b)(3) in conjunction with Fed. R. Crim. P. 6(e),(b)(5) in conjunction with the work product and deliberative privileges, and (b)(7)(C).  <u>See</u> Ferrel Decl.

The Tax Division undertook an exhaustive search for records responsive to plaintiff's FOIA requests.  This search resulted in the location of responsive documents which were provided to plaintiff.

**6.   <u>DEA's Search For Responsive Documents Was Reasonable</u>**

By letter dated June 11, 2005, the plaintiff requested "all records."  The plaintiff specifically, wanted to "search the

criminal investigative files, which may have records compiled in Palm Beach, Florida, and Brooklyn, NY." Plaintiff's letter dated June 11, 2005 was interpreted as seeking criminal investigative records that referenced the plaintiff's name. Wassom Decl. ¶¶ 6,18, and Exhibit A.

SARO is the DEA office responsible for responding to, the search for, and the processing and release of information requested under FOIA and PA. Id. ¶ 5.

Criminal investigative records about the plaintiff were reasonably likely to be found in the DEA Investigative Reporting and Filing System (IRFS), JUSTICE/DEA-008. IRFS is a DEA Privacy Act System of Records that contains all administrative, general, and criminal investigative files compiled by DEA for law enforcement purposes. No other records system within DEA would reasonably contain information responsive to the plaintiff's request. The DEA Narcotics and Dangerous Drugs Information System (NADDIS)is the index to and the practical means by which DEA retrieves investigative reports and information from IRFS. As an index, NADDIS points to investigative files and particular DEA Reports of Investigation (ROI), DEA Form-6 or other documents by date, that contain information regarding a particular individual or subject of an investigation. Individuals are indexed and identified in NADDIS by their name, Social Security Number, and/or date birth. Id. ¶ 19.

On August 29, 2005, a NADDIS query was conducted by SARO, in response to the plaintiff's requested date June 11, 2005. The search was conducted by a SARO pre-processor, who used the plaintiff's name, Social Security Number, and date of birth. Id. ¶ 20.

As a result of the NADDIS query, 156 pages of material responsive to the plaintiff's requests to DEA were reviewed. At that time, the case agents indicated that the cases associated with the pages were open, so each of the 156 pages was withheld in its entirety. The 15 pages that were withheld in their entirety were withheld pursuant to FOIA Exemption (b)(7)(A). Information was also withheld pursuant to FOIA Exemptions (b)(2), (b)(3), (b)(7)(C), (b)(7)(D), (b)(7)(F), and the Privacy Act, 5 U.S.C. § 552a(j)(2). Id. ¶ 21, and Exhibit J.

On May 23, 2006, DEA forwarded ten pages to the Department of Treasury, Financial Crimes Enforcement Network (FinCEN) for review and return to DEA. On May 31, 2006, FinCEN responded to DEA, recommending withholding of the FinCEN information. Id. ¶ 17. On May 31, 2006, FinCEN recommended withholding information in the DEA record in accordance with the FOIA Exemptions 5 U.S.C. § 552(b)(3), (b)(6), (b)(7)(C), and (b)(7)(E). Smith Decl. ¶ 6.

The DEA undertook an exhaustive search for records responsive to plaintiff's FOIA requests. This search resulted in the location of responsive documents which were provided to

plaintiff.

**7.  EOUSA's Search for Responsive Records was Reasonable with Regard to Requests 05-3743 and 06-546**

On December 16, 2005, EOUSA received a referral of six pages from the United States Marshal's Service for processing and direct response to the requester, Mr. Graziano.  EOUSA assigned number 05-3743-R to the request.  <u>Id</u>. ¶ 9.

By letter dated January 11, 2006, EOUSA released three pages in full and one page in part, and withheld two-pages in full.  By letter dated May 18, 2006, EOUSA released the two-pages in part that were previously withheld in full.  EOUSA withheld information under Exemption (j)(2) of the PA, 5 U.S.C. § 552a(j)(2), and under Exemptions (b)(5)and (b)(7)(C) of the FOIA, 5 U.S.C. § 552 (b)(5) and (b)(7)(C).  <u>Id</u>. ¶ 10.

On February 16, 2006, EOUSA received a referral of 322 pages from the Criminal Division of the U.S. Department of Justice for processing and direct response to the requester, Mr. Graziano.  EOUSA assigned number 06-546-R to the request.  <u>Id</u>. ¶ 22.

By letter dated March 31, 2006, EOUSA released two-pages in part and withheld 320 pages in full.  EOUSA withheld information under Exemption (j)(2) of the PA, 5 U.S.C. § 552a(j)(2), and under Exemptions (b)(2), (b)(3), (b)(5), (7)(a) and (b)(7)(C) of the FOIA, 5 U.S.C. § 552 (b)(2), (b)(3), (b)(5),(7)(a), (b)(7)(C)(EOUSA is asserting only FOIA Exemptions (b)(3), (b)(5), and (b)(7)(C) for this case.)  <u>Id</u>. ¶ 23.

EOUSA undertook an exhaustive search for records responsive to plaintiff's FOIA requests.  This search resulted in the location of responsive documents which were provided to plaintiff.

### 8.    USMS's Search for Responsive Records was Reasonable

On July 14, 2005, the USMS Office of General Counsel (OGC) received a letter dated June 11, 2005, by which plaintiff requested a copy of all records pertaining to him.  Bordley Decl. ¶ 3, and Exhibit B.

A search for records pertaining to plaintiff was conducted in the databases and paper files of the USMS district offices for the locations identified in his request, i.e., the Southern District of Florida and the Eastern District of New York using plaintiff's name, date of birth, and prisoner registration number as identifiers.  Id. ¶ 4.

As a result of this search, 57 pages of records pertaining to plaintiff were located in Prisoner Processing and Population Management/Prisoner Tracking System (PPM/PTS), JUSTICE/USM-005, and the Warrant Information Network (WIN), JUSTICE/USM-007, system of records.  Records maintained in these systems are compiled for law enforcement purposes in connection with the USMS receipt, processing, transportation and custody of federal prisoners, the execution of Federal arrest warrants, and the investigation of fugitive matters.  As such, these systems of

records were exempt from the access provisions of the Privacy Act pursuant to 5 U.S.C. § 552a(j)(2).  Therefore, to ensure maximum access, plaintiff's records were processed for disclosure pursuant to FOIA, 5 U.S.C. § 552.  Id. ¶ 5.

By letter dated November 29, 2005, the USMS responded to plaintiff's request and informed plaintiff that after conducting a search of its files, fifty-seven (57) pages of records had been located which were indexed to plaintiff's name.  Of the fifty-seven (57) pages located, thirty-eight (38) pages were disclosed to plaintiff in their entirety, six pages were referred to Bureau of Prisons (BOP), four pages were referred to the Executive Office for United States Attorney (EOUSA), and the remaining 9 pages were disclosed with minimal deletions pursuant to Exemption (b)(7)(C) of the FOIA, 5 U.S.C. § 552(b)(7)(C).  Id. ¶ 6, and Exhibit C.

USMS undertook an exhaustive search for records responsive to plaintiff's FOIA requests.  This search resulted in the location of responsive documents which were provided to plaintiff.

### 8.    USPS's Search for Responsive Records was Reasonable

By letter dated June 11, 2005, and received July 8, 2005, plaintiff made a FOIA request for copies of any and all documents, records, and information that any part of our agency had in its possession that was in any way connected or related to

his name, in particular, all criminal investigatory and mail watch records in Palm Beach, FL and Brooklyn, NY.  Freeman Decl. ¶ 4, and Exhibit A.

The Inspection Service conducts criminal, civil, and administrative investigations.  The files containing records about inactive investigations are generally physically located in the Criminal Investigative Service Center (CISC), Human Resource Service Center (HRSC), Procurement & Administrative Service Center (PASC), or Security Investigations Service Center (SISC) until transferred to a Federal Records Center.  Investigative files may contain investigative reports, notes, memoranda background data including arrest records, statement of informants and witnesses, laboratory reports of evidence analysis, search warrants, summons and subpoenas, and other information related to the investigation.  Records pertaining to consensual electronic surveillance are also covered by the Investigative File System and located with the investigative files.  Personal data in the Investigative File System may contain fingerprints, handwriting samples, reports of confidential informants, physical identifying data, voice prints, polygraph tests, photographs, and individual personal and payroll information.  Inspection Service database systems such as the Inspection Service Integrated Information System (ISIIS), contain additional or summary duplicative case file and other information in support of investigations.  The

contents of these files are accessible by name and or social security number.  Records are maintained 1 to 15 years depending on type.  Id. ¶ 11.

In response to the request at issue in this litigation, a review of the Postal Inspection Service documents was initiated. During the review, it was determined that 124 pages could be released to plaintiff.  Most of the 124 pages were provided in their entirety and some pages have deletions protected under FOIA Exemptions (b)(2), (b)(6), (b)(7)(C), and (b)(7)(D).  An additional 76 pages were withheld in their entirety.  The deletions are protected under FOIA Exemptions (b)(2), (b)(6), (b)(7)(C), and (b)(7)(D).  Id. ¶¶ 9,10.

USPS undertook an exhaustive search for records responsive to plaintiff's FOIA requests.  This search resulted in the location of responsive documents which were provided to plaintiff.

### 9.    IRS's Search for Responsive Records was Reasonable

In an effort to properly respond to plaintiff's complaint, the Mr. McMahan contacted the Fresno Appeals Office and spoke with Margaret Field, Supervisory Appeals Officer on January 31, 2006.  She performed a search of the Service's Electronic Disclosure Information Management Systems (EDIMS)[6] and Appeals

---

[6]  EDIMS is a computerized nationwide information system for inventory control and casework management of disclosure requests made to the Service's disclosure offices.  All FOIA/PA requests submitted to the

Centralized Database System (ACDS)[7], but was unable to locate any records of requests made by the plaintiff.  McMahan Decl. ¶ 3.

On February 2, 2006, William R. Taylor, Supervisory Special Agent based in the Dallas Field Office, performed a search of the Criminal Investigation Management Information System (CIMIS)[8]. The search returned information concerning a criminal investigation involving the plaintiff that was investigated by Criminal Investigators Alan Fogel and James Riley located in New York.  Id. ¶ 4.

Mr. Fogel reviewed one box of documents relating to the criminal investigation of plaintiff which were found during a search being conducted in response to plaintiff's FOIA request. After Mr. Fogels's review, it was determined the documents were Grand Jury material protected from disclosure by FOIA Exemption (b)(3) in conjunction with Fed. R. Crim. P. 6(e).

---

Service since October 1, 1997, are documented in EDIMS.  EDIMS is used, among other things, to record actions taken by disclosure office employees in processing disclosure requests assigned to them.  EDIMS is networked to other Service Disclosure Offices, allowing Service employees to ascertain whether other requests for the same information have been filed by the requester.  EDIMS allows Service employees to search recorded entries of paper files containing copies of the original request letters, any documents responsive to the requests, and any correspondence between the Service and a requester, nationwide.

[7]  ACDS is the Appeals Divisions's computerized information system for case receipt, control and processing.

[8]  CIMIS is a database that tracks the status and progress of investigations and the time expended by Special Agents.  CIMIS is also used as a management tool that provides the basis for decisions of both local and national scope.

IRS undertook an exhaustive search for records responsive to plaintiff's FOIA requests. This search resulted in the location of responsive documents which were provided to plaintiff.

## G. **Defendants BOP, EOUSA, USMS, DEA, FinCEN (Consulting Agency) Appropriately Relied on Privacy Act Exemption (j)(2)**

Subsection (j)(2) of the Privacy Act exempts the following records from mandatory disclosure:

> records maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of ...(B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a (j)(2).

### 1.  **BOP Properly Applied Exemption (j)(2)**

The BOP processes all requests by individuals (or entities) for records pertaining to themselves (as in this case) under both the Freedom of Information and the Privacy Acts in order to provide the requester the maximum disclosure authorized by law.[9] Summers Decl. ¶ 21.

---

[9]  The BOP's system of records is exempt from the Privacy Act of 1974, 5 U.S.C. § 552a by virtue of subsection (j)(2) of The Act. See 28 C.F.R. § 16.81 (2000). Thus, plaintiff's access rights are limited to those provided by the FOIA.

The BOP is a law enforcement agency.  Indeed, the term, "law enforcement officer" is defined as "an employee of the Bureau of Prisons or Federal Prison Industries, Inc." See, e.g., 5 U.S.C. § 8401(17)(D)(i).  Furthermore, BOP employees perform inherently law enforcement functions.  They possess the authority to make arrests, 18 U.S.C. § 3015; seize evidence, 18 U.S.C. § 4012; and execute searches on inmates and visitors to the institution, 28 C.F.R. §§ 511.10-511.12, 552.10-552.14.  Additionally, the BOP is tasked with the law enforcement mission of protecting inmates, staff, and the community.[10]  As such, the files of federal inmates are essential to BOP staff in carrying out the law enforcement mission of the BOP.  Id. ¶ 23.

## 2.   EOUSA Properly Applied Exemptin (j)(2)

### A. Request 05-3743-R

EOUSA processes all requests by individuals for records pertaining to themselves under both the Freedom of Information and the Privacy Acts in order to provide the requester the maximum disclosure authorized by law.  The Criminal Case Files maintained by various U.S. Attorney Offices are within the

---

[10] 18 U.S.C. § 4042 sets out the BOP's general authority:
"The Bureau of Prisons, under the direction of the Attorney General, shall (1) have charge of the management and regulation of all Federal penal and correctional institutions; (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise; (3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States."

regulations pertaining to the Department of Justice Privacy Act
Systems of Records at 28 C.F.R. § 16.81(a)(4).  Pursuant to 28
C.F.R. § 16.81, the Attorney General has exempted Criminal Case
Files from the Privacy Act's access provisions because they are
records of an agency which performs as its principal function
activity pertaining to the enforcement of criminal laws.  The
Privacy Act, 5 U.S.C.  § 552a(j)(2), exempts from mandatory
disclosure records maintained by an agency or component thereof,
which performs as its principal function any activity pertaining
to the enforcement of criminal laws. Here, because Mr. Graziano's
records were part of the criminal case files of the USAO for the
Eastern District of New York, and were, therefore, compiled for
law enforcement purposes, it was determined that the records
withheld, which were responsive to Mr. Graziano's request, were
not disclosable under the Privacy Act.  Kornmeier Decl. ¶ 11.

   **B. Request 06-546-R**

   EOUSA processes all requests by individuals for records
pertaining to themselves under both the Freedom of Information
and the Privacy Acts in order to provide the requester the
maximum disclosure authorized by law.  The Criminal Case Files
maintained by various U.S. Attorney Offices are within the
regulations pertaining to the Department of Justice Privacy Act
Systems of Records at 28 C.F.R. § 16.81(a)(4).  Pursuant to 28
C.F.R. § 16.81, the Attorney General has exempted Criminal Case

Files from the Privacy Act's access provisions because they are records of an agency which performs as its principal function activity pertaining to the enforcement of criminal laws.  The Privacy Act, 5 U.S.C.  § 552a(j)(2), exempts from mandatory disclosure records maintained by an agency or component thereof, which performs as its principal function any activity pertaining to the enforcement of criminal laws.  Here, because Mr. Graziano's records were part of the criminal case files of the USAO for the Southern District of Florida, and were, therefore, compiled for law enforcement purposes, it was determined that the records withheld, which were responsive to Mr. Graziano's request, were not disclosable under the Privacy Act.

### 3.    __USMS Properly Applied Exemption (j)(2)__

Records pertaining to plaintiff were located in Prisoner Processing and Population Management/Prisoner Tracking System (PPM/PTS), JUSTICE/USM-005, and the Warrant Information Network (WIN), JUSTICE/USM-007, system of records.  Records maintained in these systems are compiled for law enforcement purposes in connection with the USMS receipt, processing, transportation and custody of federal prisoners, the execution of Federal arrest warrants, and the investigation of fugitive matters.  As such, these systems of records were exempt from the access provisions of the Privacy Act pursuant to 5 U.S.C. § 552a(j)(2).  Bordley Decl. ¶ 5.

-39-

### 4.   DEA Properly Applied Exemption (j)(2)

Material was withheld pursuant to Privacy Act, 5 U.S.C. § 552a(j)(2).  IRFS is a Privacy Act System of Records that was last reported at 66 Fed. Reg. 8425 and last published in its entirety at 61 Fed. Reg. 54219.  In accordance with the Privacy Act, rules were promulgated, pursuant to 5 U.S.C. § 552a(j)(2), to exempt records contained in IRFS from access. 28 C.F.R. § 16.98(c)(3).  Wassom Decl. ¶ 37.

In accordance with the Privacy Act, 5 U.S.C. § 552a(b), except pursuant to a written request by, or with prior written consent of, the individual to whom the record pertains, no information relating to a third party was released, unless required by the FOIA or pursuant to a routine use. No routine use exists for and the plaintiff did not provide a release authorization or proof of death for the release of any third party information.  Therefore, all third party information was withheld where release was not required by the FOIA.  Id. ¶ 38.

### A. FinCEN Properly Applied Exemption (j)(2)and (k)(2)

The BSA records relating to third-parties are maintained in a system of records, that is exempt from the access provisions of the Privacy Act in accordance with 5 U.S.C. § 552a(j)(2), relating to systems of records containing information compiled for law enforcement purposes, and 5 U.S.C. § 552a(k)(2), relating to investigatory material compiled for law enforcement purposes,

other than material within the scope of subsection (j)(2).

## H.   The Defendants USNCB, BOP, DEA, USPS, and ATF Appropriately Relied on Exemption 2

Pursuant to 5 U.S.C. § 552(b)(2) ("Exemption 2"), the Government is not required to disclose records "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  Exemption 2 applies primarily to two types of materials: (1) internal agency matters so routine or trivial that they could not be "subject to ... a genuine and significant public interest" and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations.  Department of Air Force v. Rose, 425 U.S. 352, 369-70 (1976); Schiller v. N.L.R.B., 964 F.2d 1205, 1207 (D.C. Cir. 1992); National Treasury Employees Union v. U.S. Customs Service, 802 F.2d 525, 528-30 (D.C. Cir. 1986); Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981); Truesdale v. U.S. Dept. of Justice,  2005 WL 3294004, *4 - *5 (D.D.C. 2005); Gonzalez v. Bureau of Alcohol, Tobacco and Firearms, 2005 WL 3201009, *6 (D.D.C. 2005); Dorsett v. U.S. Dept. of Treasury, 307 F.Supp.2d 28, 35-36 (D.D.C. 2004); Edmonds v. F.B.I., 272 F.Supp.2d 35, 50 (D.D.C. 2003).

Depending upon the nature of the information, documents will fall within either the "low (b)(2) category" or the "high (b)(2) category."  Schiller, 964 F.2d at 1207. "Low (b)(2)" information

refers to internal procedures and practices of an agency, where disclosure would constitute an administrative burden unjustified by any genuine and significant public benefit. <u>Martin v. Lauer</u>, 686 F.2d 24, 34 (D.C. Cir. 1982); <u>see also</u> <u>Schiller</u>, 964 F.2d at 1207. "Low (b)(2)" information can be protected only if the information qualifies as a personnel rule or internal practice of an agency or is sufficiently related to such a rule or practice. <u>See</u> <u>Schwaner v. Department of Air Force</u>, 898 F.2d 793, 795 (D.C. Cir. 1990); <u>Voinche v. F.B.I.</u>, 46 F.Supp.2d 26, 30 (D.D.C. 1999).

Thus, trivial administrative data, such as file numbers, mail routing stamps, initials, data processing notations, brief references to previous communications, and other like administrative markings are exempt from disclosure. <u>Coleman v. F.B.I.</u>, 13 F.Supp.2d 75, 78-79 (D.D.C. 1998), <u>citing</u>, <u>Lesar v. U.S. Dept. of Justice</u>, 636 F.2d 472 (D.C. Cir. 1980); <u>see also</u> <u>Schiller</u>, 964 F.2d at 1208 (protecting from disclosure internal agency time deadlines and procedures, recordkeeping directions, instructions on which agency official to contact for assistance, and guidelines on clearance procedures); <u>Nix v. United States</u>, 572 F.2d 998, 1005 (4th Cir. 1978)(protecting cover letters of merely internal significance); <u>Scherer v. Kelley</u>, 584 F.2d 170, 175-78 (7th Cir. 1978)(protecting "file numbers, initials, signature and mail routing stamps, references to interagency transfers, and data processing references"); <u>Voinche</u>, 46 F.Supp.2d at 30 (protecting the file number for an informant and telephone extension of the Public Corruption Unit of the FBI's

-42-

Criminal Investigation Unit); <u>Wilson v. Department of Justice</u>, 1991 WL 111457, at *2 (D.D.C. 1991)(protecting transmittal slips from low level officials).  The notion behind this reasoning is that administrative agencies should not be burdened by responding to requests for trivial information unlikely to be the subject of public interest.  <u>Martin</u>, 686 F.2d at 34.

### 1.  USNCB Properly Applied Exemption 2

A search of the USNCB's system of records was conducted on July 14, 2005 and July 15, 2005. No responsive documents or records were located in the administrative files, however, there was an electronic file consisting of five pages which was identifiable with the plaintiff's name.  It was ascertained that this was a master file which had reference to his name, along with the names of multiple crime organizations and other individuals.  Beaty Decl. ¶ 9.

The file was reviewed by an attorney-advisor and a supplemental release was made.  The first and seventh page of the 15 page printout, removing the page numbering and the web address under Exemption (b)(2) and the third-party information under (b)(7)(C).  <u>Id</u>. ¶ 10.

### 2.  BOP Properly Applied Exemption 2

Specifically, 23 documents (Central Inmate Monitoring (CIM) Separatee Information), were excised in part pursuant to §§ 552(b)(2)High, (b)(5), (b)(7)(C) and (b)(7)(F) because they contained information maintained solely for BOP purposes relating

to internal law enforcement agency practices; because it would constitute an unwarranted invasion of the personal privacy of other inmates, because release of the information would inhibit the open and frank communications between government employees, and release of the information could endanger the physical safety of the other individuals/inmates.  Summers Decl. ¶ 14.

A total of nine (9) pages (correspondence between staff and Assistant United States Attorney, etc.) were withheld in their entirety pursuant to §§ 552 (b)(2)High, (b)(7)(C) and (b)(7)(F), because they contained information maintained solely for BOP purposes relating to internal law enforcement agency practices; because they would constitute an unwarranted invasion of the personal privacy or endanger the physical safety of other individuals/inmates.

### 3.    DEA Properly Applied Exemption 2

Pursuant to DEA rules and practices as indicated in the DEA Agents Manual, many of the pages in this case contain "violator identifiers" consisting of G-DEP (Geographical Drug Enforcement Program) codes, NADDIS, and confidential informant numbers are part of DEA's internal system of identifying information and individuals.  Wassom Decl. ¶ 40.

> (a) G-DEP codes are assigned to all DEA cases at the time the case file is opened and indicate the classification of the violator, the types and amount of suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal activity.  Id.
> (b) NADDIS numbers are multi-digit numbers assigned to drug violators and suspected drug violators known to DEA and entities that are of investigative interest.

-44-

Each number is unique and is assigned to only one
violator within the DEA NADDIS indices.  (The NADDIS
indices are exempt from the access provisions of the
Privacy Act, 5 U.S.C. § 552a(j)(2); C.F.R. 16.98
(2005).)  Thus, Exemption (b)(7)(C) and (b)(7)(F) were
used in conjunction with (b)(2) to withhold third-party
NADDIS numbers.  Id.
(C) Informant identifier codes are assigned to DEA and
other law enforcement agencies to cooperating
individuals and are used instead of their names in all
DEA reports, memoranda and other internal
correspondence.  Informant identifier codes provides
sensitive information about individuals who cooperate
with DEA and other law enforcement functions.
Knowledge of informant identifier codes can assist in
identifying the informant and provide sensitive
information about individuals who cooperate with DEA in
carrying out its law enforcement functions.  Exemptions
(b)(7)(C), (b)(7)(D) and (b)(7)(F) were used in
conjunction with (b)(2) to withhold these identities.
Id.

The release of the G-DEP codes would help identify priority

given to narcotic investigations, types of criminal activities

involved, and violator ratings.  Suspects could decode this

information and change their pattern of drug trafficking in an

effort to respond to what they determined DEA knows about them or

avoid detection and apprehension and create alibis for suspected

activities.  Disclosure of the codes would, therefore, thwart the

Drug Enforcement Administration's investigative and law

enforcement efforts.  All G-DEP codes found in the responsive

pages are withheld.  Id. ¶ 41.

NADDIS numbers and informant identifier codes are unique and

personal to the individual to whom the number applies.  They are

assigned by DEA for internal use and there is no public interest

in the release of these codes.  Id. 42.

DEA is asserting Exemption (b)(2) to withhold Program codes

-45-

on several pages.  Program codes identify various case files that relate to the same subject.  Program codes assigned to subjects of significant, multi-jurisdictional interest.  The release of the Program codes would help identify priority given to narcotic investigations, types of criminal activities involved, and violator ratings.  Suspects could decode this information and change their pattern of drug trafficking in an effort to respond to what they determined DEA knows about them or avoid detection and apprehension and create alibis for suspected activities. Disclosure of the codes would, therefore, thwart the Drug Enforcement Administration's investigative and law enforcement efforts.  Program codes found in the responsive pages are withheld on pages 62-63, 71-94, 99-100, 109, and 127.  Id. ¶ 43.

### 4.  USPS Properly Applied Exemption 2

A total of 124 pages of Inspection Service records can be furnished to plaintiff.  Deletions were made on 62 of the 124 pages pursuant to Exemptions (b)(2), (b)(6), (b)(7)(C), and (b)(7)(D).  A total of 76 pages (out of 237 pages) of Inspection Service investigative records were withheld in full, on the basis of Exemptions 2, 6, and Exemptions 7(C), and 7(D).  A description of the records by category and the application of the FOIA exemptions are as follows: Exemption 2 exempts from mandatory disclosure "records related solely to the internal personnel rules and practices of an agency."  Disclosure would be only tenuous and peripheral to the investigative case.  Freeman Decl. ¶¶ 14,15.

-46-

### 5.   **ATF Properly Applied Exemption 2**

The redacted information in the records that were provided to plaintiff consists of file numbers and other internal administrative codes.  This information is for administrative and law enforcement purposes only and is of no legitimate interest to the public.  The disclosure of this material would risk the circumvention of Federal law enforcement and investigatory efforts.  Graham Decl. ¶ 12.

Exemption (b)(2) is being invoked exclusively for information contained in the Treasury Enforcement Communications System (TECS), a law enforcement database used by Department of Treasury (to which ATF belonged prior to 2003) law enforcement agencies to conduct criminal history checks.  The data displayed on screen prints of TECS records that is redacted is done so for the following reasons.  Information displayed identifies the terminal from which a query was accomplished by a terminal ID and a logical unit ID to show its mainframe connection.  The remaining data relates to the software application that identifies how the displayed record was retrieved, specifically, the software program mapping code; the routing codes within the program that allows the query to move from screen to screen, and; the codes that allow movement to other programs from the displayed screen.  These are pieces of sensitive information that if in the hand of computer literate individuals with mainframe knowledge could provide information on the structure of the

-47-

mainframe system used, exposing the system to possible
circumvention.  Further, disclosure could facilitate unauthorized
access to ATF's database and interfere with investigations and
law enforcement.  Id. ¶ 13.

I.   **Criminal Division, Tax Division, DEA, FinCEN[11] (Consulting
     Agency) EOUSA, and IRS Properly Applied Exemption 3**

     Title 5, United States Code, Section 552 (b)(3) (hereinafter
Exemption 3) allows the withholding of information protected from
disclosure by another statute if that statute:

>      (A) requires that the matters be withheld from the
> public in such a way as to leave no discretion on the
> issue, or (B) establishes particular criteria for
> withhold or refers to particular types of matters to be
> withheld.

5 U.S.C. § 552 (b)(3).

     While records may be withheld under the authority of another
statute pursuant to Exemption 3 if and only if that statue meets
the requirements of Exemption 3, the breadth and reach of the
disclosure prohibition does not necessarily have to be found on
the face of the statute in question.  The statute must at least
explicitly deal with public disclosure.  Reporters Comm. for
Freedom of the Press v. U.S.Dept. of Justice, 816 F.2d 730, 734-
36 (D.C. Cir. 1987), modified on other grounds, 831 F.2d 1124
(D.C. Cir. 1987), rev'd on other grounds, 489 U.S. 749 (1989).
Once an agency establishes that a statute is a nondisclosure
statute and that it meets at least one of the requirements of

---

[11]  FinCEN is not a named defendant in this suit. The DEA consulted
with this agency on several documents.

Exemption 3, it must also establish that the records at issue fall within the withholding provision of the nondisclosure statute.  Fund for Constitutional Government v. National Archives and Records Service, 656 F.2d 856, 866-69 (D.C.Cir. 1981). Typically, this requires an interpretation of the nondisclosure statute.  See Washington Post Co. v. U.S. Dept. of Justice, 863 F.2d 96, 100 (D.C.Cir. 1988).

Exemption (b)(3) of the FOIA permits the withholding of information prohibited from disclosure by another statute only if one of two disjunctive requirements are met: the statute either (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.  A statute thus falls within the exemption's  coverage if it satisfies any one of its disjunctive requirements.

1.    **Criminal Division Properly Applied Exemption 3**

FOIA Exemption 3 permits the withholding of information specifically exempted from disclosure by another statute, provided that the statute (A) requires that the matter be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.  5 U.S.C. § 552(b)(3).  Hsu Decl. ¶ 17.

Title III of the Omnibus Crime Control and Safe Street Act of 1968, 18 U.S.C. §§ 2510-2521 (hereafter "Title III") provides

-49-

a comprehensive statutory scheme regulating both the electronic surveillance as an investigative tool as well as the disclosure of information obtained through such surveillance.  Title III imposes clear restraints on the use and disclosure of interception communications.  Title III expressly authorizes the recovery of civil damages by individuals whose communications have been disclosed in violation of this statute.  Since "Title III clearly identifies intercepted communications as the subject of its disclosure limitations" it "falls squarely within the scope of subsection (B)'s second prong, as a statute referring to 'particular types of matters to be withheld'"[12] and thus constitutes a valid statutory basis for non-disclosure under Exemption (b)(3)(B).  Id. ¶ 18.

Pursuant to Exemption 3 and Title III, the Criminal Division's FOIA/PA Unit withheld:[13]

▸   From Item 4 - information concerning the contents of intercepted communications, including direct quotes from these interceptions;

▸   From Item 5 - ten paragraphs of information concerning the contents of intercepted communications, including direct quotes from these interceptions;

▸   From Item 7 - six paragraphs of information concerning the contents of intercepted communications, including direct quotes from these interceptions;

▸   From Item 9 - three lines of information identifying the subjects of intercepted communications;

---

[12]  Lam Lek Chong v. U.S. Drug Enforcement Administration, 929 F.2d 729, 732, 733 (D.C. Cir. 1991).

[13] Information that identifies specific individuals (other than plaintiff) as the subject of wiretap surveillance was also withheld pursuant to Exemptions 6 and 7(C).  See Hsu Decl. ¶¶ 31-38.

▸ <u>From Item 11</u> - five paragraphs of information concerning the contents of intercepted communications, including direct quotes from these interceptions;

▸ <u>From Item 13</u> - eight paragraphs of information concerning the contents of intercepted communications, including direct quotes from these interceptions;

▸ <u>From Item 17</u> - several paragraphs of information concerning the contents of intercepted communications, including direct quotes from these interceptions.

<u>Id</u>. ¶ 19.

The FOIA/PA Unit determined that releasing information concerning the contents of intercepted communications or information derived therefrom would violate the disclosure prohibitions of Title III and therefore withheld this information pursuant to Exemption 3.[14]  <u>Id</u>. ¶ 20.

## 2.  <u>Tax Properly Applied Exemption 3</u>

26 U.S.C. Section 6103 in connection with FOIA Exemption (b)(3) permits the withholding of portions of numerous documents.

The information in these documents reflects confidential tax return information of third parties (taxpayers other than the requestor of information) who have not provided written consent to the disclosure of their return information.  Section 6103(a) provides that return information shall be confidential.  Section 6103(b)(2) broadly defines return information to include a taxpayer's identity, the nature and source of a taxpayer's income and deductions, the fact that the taxpayer is or was under

---

[14] Additionally, these sections <u>also</u> qualify for protection under Exemption 5 and are included in the descriptions of material withheld pursuant to that exemption.

investigation and includes any other data with respect to the existence or possible existence of criminal or civil tax liability.  Section 6103(b)(6) defines a taxpayer's identity as the taxpayer's name, address and identification number.  Most of the information or data regarding a taxpayer's criminal liability is provided to the Criminal Section of the Tax Division by the I.R.S. as part of the prosecution recommendation process.  Ferrel Decl. ¶ 16.

The material withheld pursuant to 26 U.S.C. Section 6103, at a minimum, identifies particular taxpayers in the context of their being under investigation for tax crimes. The fact that a taxpayer is under investigation is squarely within the definition of tax return information and thus cannot be disclosed.  Some of the documents discuss specifics regarding the nature and source of unreported income and data relating to the presence of tax liabilities.  Id. ¶ 17.

Exemption (b)(3)in conjunction with Rule 6(e) of the Federal Rules of Criminal Procedure permits the withholding of several documents.  Rule 6(e) prohibits disclosure of "matters occurring before the grand jury."  Continued secrecy of the names of grand jury witnesses safeguards them from possible retaliation and encourages other witnesses to testify before future grand juries. Continued secrecy of the names of targets of the grand jury investigations protects their reputations. The evidence presented to the grand jury was apparently not sufficient to warrant prosecution of some of the targets.  A primary function of the

grand jury is to protect the innocent from unwarranted public trials.  This safeguard would be undermined if the names, identifying information and allegations presented to the grand jury relating to presumptively innocent unindicted grand jury targets were made public.  Rule 6(e) protects against disclosure of this type of information.  In addition, the prosecution recommendations refer to or summarize evidence presented to the grand jury.  Release of material from prosecution recommendations would therefore reveal not only the scope and direction of the grand jury's investigation, but identify and describe the specific evidence considered by the grand jury.  This material is protected by Rule 6(e) as well.  Id. ¶ 18.

Pursuant to Exemption (b)(3) and Rule 6(e), material was also withheld from SARs prepared by I.R.S. Special Agents acting as agents of the grand jury and CRL's prepared by I.R.S. attorneys based on the SARs because disclosure would reveal specific evidence considered by the grand jury investigation or would reveal the names and identifying information of grand jury target and witnesses.  Id. ¶ 19.

### 3.    DEA Properly Applied Exemption 3

DEA is asserting FOIA exemption (b)(3) in conjunction with 31 U.S.C. § 3519 as an additional basis for withholding material on pages 31 through 38.  31 U.S.C. § 5319 provides that reports and records of reports created under the provisions of the Bank Secrecy Act (BSA) are exempt from disclosure under the FOIA. Wassom Decl. ¶ 44.

-53-

Title 18 U.S.C. § 2510 *et seq.* prohibits the disclosure of information obtained from the use of a wiretap unless authorized by 18 U.S.C. § 2517.  18 U.S.C. § 2517 does not authorize disclosure pursuant to the FOIA.  Three of the withheld pages, pages 117, 153, and 154, concern a wiretap investigation of third parties.  Id. ¶ 45.

### A. **FinCEN Properly Applied Exemption 3**

FinCEN, assessing documents referred by DEA, relies on FOIA exemption (b)(3) in conjunction with 31 U.S.C. § 5319 to withhold information derived from a report or reports submitted under the BSA.  FinCEN collects five different types of reports under the BSA including Reports of International Transportation of Currency and Monetary Instruments (See 31 C.F.R. § 103.23), Reports of Foreign Bank and Financial Accounts (See 31 C.F.R. § 103.24), Currency Transaction Reports (See 31 C.F.R. § 103.22), Suspicious Activity Reports (See 31 C.F.R. §§ 103.18, 103.19, 103.20, 10.21), and Registration of Money Services Businesses (See 31 C.F.R. § 103.41).  The BSA provision found at 31 U.S.C. § 5319 provides that "a[BSA] report and records of reports are exempt from disclosure under Section 552 of title 5."  Smith Decl. ¶ 10.

### 4. **EOUSA Properly Applied Exemption 3**

EOUSA applies Exemption (b)(3) in conjunction with Rule 6(e) of the Federal Rule of Criminal Procedure to protect grand jury material in a prosecution memorandum because its release would reveal the scope of the grand jury and the direction of the

-54-

investigation by providing the identities of the targets of the investigation, the source of the evidence, as well as the actual evidence produced before the grand jury. Release of this information would provide the requestor with the scope of the grand jury's investigation by setting forth where the Government sought to find evidence to develop its case, how the Government developed its case, and upon whom the Government relied to develop the elements of the alleged crimes.  Kornmeier Decl. ¶ 27.

### 5.    **IRS Properly Applied Exemption 3**

Based upon review of the documents, it was determined they were Grand Jury material protected from disclosure by FOIA exemption (b)(3) in conjunction with Fed. R. Crim. P. 6(e).  The documents contained detailed information, which could only have been derived from Grand Jury subpoenas, gathered during the course of the grand jury investigation of the plaintiff.  Because the documents were prepared during the course of the grand jury investigation of the plaintiff and were intended to be used as part of the grand jury proceedings, disclosure would tend to reveal secret aspects of the grand jury's investigation including the identities of witnesses, details of evidence gathered during the course of the investigation, and the strategy and direction of the investigation.  Because disclosure of these documents could reasonably be expected to reveal secret aspects of the grand jury investigation and proceedings, it was concluded that the documents are appropriately protected from disclosure

pursuant to FOIA exemption (b)(3) in conjunction with Fed. R. Crim. P. 6(e). Fogel Decl. ¶ 4.

The contents of the files are as described below:

```
F1   Cancelled checks
F2   Credit card account summary
F3   Tellers' checks and money orders
F4   Witness statements regarding expenditures
F5   Credit card account information
F6   Copies of Tax Returns and One Cancelled Check
F7   Automobile Information
F8   United Postal Inspection Service
F9   Credit Card account information
F10  Credit card account information
F11  State tax returns
F12  Divorce decree
F13  Life insurance application
F14  Passport Application
```

Id. ¶ 5.

## J.   Defendants BOP, Criminal, Tax, and EOUSA Properly Applied Exemption 5.

Section 552(b)(5) of Title 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). Accordingly, Exemption 5 ensures that the public cannot obtain, through FOIA, documents "which a private party could not discover in litigation with the agency." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 148 (1975) (citing EPA v. Mink, 410 U.S. 73, 85-86, (1973)). The exemption incorporates the attorney-client privilege, the attorney work-product privilege, and the executive "deliberative process" privilege that protects candid internal discussion of legal or policy matters". Maricopa Audubon Society v. U.S. Forest Service, 108 F.3d 1082, 1084 n.1 (9th Cir. 1997).

-56-

1.    **The attorney work-product privilege**

The attorney work-product privilege protects documents and other memoranda, prepared by an attorney or others at the attorney's direction in contemplation of litigation, which set forth the attorney's theory of the case and litigation strategy. Hickman v. Taylor, 329 U.S. 495, 509-11 (1947); A. Michael's Piano, Inc. v. Federal Trade Commission, 18 F.3d 138, 146 (2d Cir. 1994).  The Hickman Court recognized that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." Coastal States Gas Corp. v. Dept. of Energy, 617 F.2d 854, at 864 (D.C. Cir. 1980), quoting Hickman.

2.    **The deliberative process privilege**

"The deliberative process privilege, also known as the 'executive' or 'governmental' privilege serves many purposes."[15] Eugene Burger Management Corp. v. U.S. Dept. of Housing and Urban Development, 192 F.R.D. 1, 4 (D.D.C. 1999)  The main purpose of this privilege "which is well established in the law, is...to 'prevent injury to the quality of agency decisions.'" Cofield, et

---

[15]    The deliberative process privilege serves: "'to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's actions.'"  Eugene Burger Management Corp., 192 F.R.D. at 4 (quoting Coastal States, 617 F.2d at 866).

al. v. City of LaGrange, Georgia, 913 F.Supp. 608, 615 (D.D.C.
1996) (quoting NLRB v. Sears Roebuck & Co., 421 U.S. 132, 151
(1975)).  The deliberative process privilege prevents harm to the
quality of agency decisions by shielding the opinions,
conclusions and reasoning used in the administrative and decision
making process of the Government.  See U.S. v. Morgan, (Morgan
IV), 313 U.S. 40, 422 (1941); Petroleum Info Corp. v. Dept. of
the Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992); Access
Reports v. Dept. of Justice, 926 F.2d 1192, 1194-1195 (D.C. Cir.
1991); United States v. Farley, 11 F.3d 1385, 1389 (7th Cir.
1993).

    For a document to be covered by the deliberative process
privilege, two requirements must be satisfied.  First, it must be
predecisional, i.e., "antecedent to the adoption of agency
policy."  Jordan v. Dept. of Justice, 591 F.2d 753, 774 (D.C.
Cir. 1978) (en banc).  In determining whether a document is
predecisional, the Supreme Court has held that an agency need not
identify a specific decision in connection with which a document
is prepared.  NLRB v. Sears, Roebuck & Co., 421 U.S. at 151 n.18.
The Court recognized that agency deliberations do not always
ripen into agency decisions, and that ultimately the privilege is
meant to protect the decisional process, rather than any
particular document or decision.  Id.; see also Dudman
Communications Corp. v. Dept. of the Air Force, 815 F.2d 1565,
1568 (D.C. Cir. 1987).  It is sufficient for the agency to
establish "what deliberative process is involved, and the role

-58-

played by the documents in issue in the course of that process." <u>Coastal States</u>, 617 F.2d at 868.  <u>Second</u>, the document must be deliberative in nature, <u>i.e.</u>, it must be "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters."  <u>Vaughn v. Rosen</u>, 523 F.2d 1135, 1143-44 (D.C. Cir. 1975).

### 1.  **BOP Properly Applied Exemption 5**

Exemption (b)(5) of the FOIA protects from disclosure that information intended for staff use only, the disclosure of which would tend to inhibit frank communication between prison officials, or correspondence that is speculative or deliberative in nature.  This exemption protects information which would not be available by law to a party other than an agency in litigation with that agency.  Summers Decl. ¶ 31.

Pursuant to the BOP's duty to manage Federal institutions in a manner which provides for the safekeeping of inmates in their custody, the BOP documents an inmate's Central Inmate Monitoring (CIM) assignment, meaning that there are other individuals, who may or may not be committed to the BOP, from whom an inmate is to be separated from for their mutual protection.  Documentation to support "Separation" or similar CIM assignments, as determined by BOP, is routinely maintained in the "FOI Exempt" section of an inmate's central file.  In addition to identifying a specific threat, or individual from who an inmate must be separated, these documents also contain other information which could lead to the identification of a specific threat, a separated individual, or

the location of a separated individual.  Id. ¶ 32.

### 2.  Criminal Division Properly Applied Exemption 5

Pursuant to Exemption 5, the Criminal Division's FOIA/PA

Unit withheld:

▸ From Item 4 – four paragraphs from a memorandum, prepared by Division attorneys, establishing probable cause for the purpose of recommending that authorization be granted to apply for an order for continued interception of wire communications;

▸ From Item 5 – two paragraphs from a memorandum, prepared by Division attorneys, recommending that authorization be granted to apply for an order for continued interception of wire communications, and six paragraphs, also prepared by Division attorneys, establishing probable cause for the interceptions;

▸ From Item 7 – six paragraphs from a memorandum, prepared by Division attorneys, establishing probable cause for the interceptions of wire communications;

▸ From Item 9 – eight paragraphs from a memorandum, prepared by Division attorneys, establishing probable cause for the interceptions of wire communications;

▸ From Item 11 – five paragraphs from a memorandum, prepared by Division attorneys, establishing probable cause for the interceptions of wire communications;

▸ From Item 13 – two footnotes from a memorandum, prepared by Division attorneys, recommending that authorization be granted to apply for an order for continued interception of wire communications, and six paragraphs, also prepared by Division attorneys, establishing probable cause for the interceptions;

▸ From Item 17 – five paragraphs from a memorandum, prepared by Division attorneys, establishing probable cause for the interceptions of wire communications;

▸ From Item 25 – a three-page memorandum, prepared by Division attorneys, which outlines the prosecution and proposed indictments in a criminal matter; and

▸ From Item 26 – a four-page memorandum, prepared by Division attorneys, which makes a recommendation regarding wire authorization.

-60-

Hsu Decl. ¶ 22.

Items 4, 5, 7, 9, 11, 13, 17, 25 and 26, set forth Criminal Division attorneys' thoughts, opinions, candid discussions, and recommendations concerning the need for continued interception of wire communications, proposed indictments, and outlines the course of the prosecution in matters involving racketeering, RICO violations, illegal gambling, and adding and abetting.  The fear that such information would, at a later time, be made available to the public would inhibit candor and diminish the overall quality of the decisional process.  Id. ¶ 24.

These documents satisfy Exemption 5's threshold requirement of being inter-agency or intra-agency memoranda.  Although shared with other Department of Justice personnel, there is no indication that these documents have ever been publicly disclosed.  Indeed, communications of this nature are, customarily, never made public.  Id. ¶ 25.

Moreover, these documents are crucial elements of the deliberations in making key decisions in Criminal prosecutions. Specifically, these memorandums preceded the final decision to authorize the application for wire interceptions on individuals subject to a criminal investigation, and expresses opinions and provides recommendations relevant to the final decision. Additionally, one document (item 25), withheld in full, sets forth the framework for the prosecution of a RICO conspiracy and fraud scheme, outlines charges presumed, and proposed indictments

prior to the actual return of the indictments.  Such, information explaining prosecutory strategy and possible indictments clearly play a direct part in the agency's deliberative process by making recommendations or expressing opinions on legal matters.  As such, these documents are replete with the attorneys' analyses, recommendations, assessments of the facts and application of the law to the facts.  These documents constitute a final agency decision.[16]  Id. ¶ 26.

The aforementioned documents being withheld are, in addition to the deliberative process privilege aspect of Exemption 5, also being withheld under the independent, but overlapping, attorney work product privilege.  This privilege protects documents, prepared by an attorney or his/her agent in anticipation of litigation, which reveal the attorneys' thought precesses, theory of the case, or litigation strategy.  This privilege protects the adversarial trial process by insulating the attorneys' preparation from scrutiny.

The items withheld under the attorney work product doctrine of Exception 5 set forth the attorneys' thoughts, impressions, evidence development, legal theory of the case, and facts and issues upon which an attorney could evaluate the case.  The material identifies specific precedents and discusses this case

---

[16]  The deliberative process privilege ordinarily requires that reasonably segregable, factual information be released.  However, as will be discussed, these documents are also being withheld pursuant to the attorney work-product privilege, which authorizes withholding of factual, as well as deliberative information.

in conjunction with the prosecutions.  It also reflects the factors considered in arriving at some of the most important decisions reached by the Criminal Division attorneys.  It is vital to effective law enforcement efforts that prosecutors are able to candidly commit such information to writing, free of the fear that their analytical processes, investigative strategies, and case evaluations will, at a later time, be made available to the public.  Plainly, decisions regarding how the Criminal Division should proceed through investigatory process in a criminal matter must constitute the most sensitive deliberations undertaken by prosecutors and other Department attorneys, and are matters in which it is vital to foster an atmosphere in which opinions, analyses and recommendations can be freely exchanged. Id. ¶ 28.

Inasmuch as attorney work product privilege incorporated in FOIA Exemption 5 protects both factual work product and analytical work product from disclosure, there are no nonexempt portions of some of these documents to be segregated out and disclosed.  Furthermore, as set forth in paragraphs 17 through 20 above, certain factual material, relied upon to recommend continued interception of wire communications, also constitutes information properly withheld under FOIA Exemption (b)(3).  Id. ¶ 29.

Public release of the information in these documents would inhibit the candid, internal discussion essential for efficient and proper litigation preparation in these types of cases.

Similarly, disclosure would provide insight onto the agency's general strategic and tactical approach to prosecuting such cases and would consequently harm the very adversarial process which the attorney work product privilege is designed to protect.  Id. ¶ 30.

### 3.    Tax Division Properly Applied Exemption 5

Exemption 5 in conjunction with the attorney work product privilege was applied to the withheld portions of Documents 16, 18 and 19 in D.J. File 5-52-18092.  These documents were all prepared by attorneys in anticipation of litigation, namely the grand jury investigation of the targets of the investigation and their potential prosecution.  Ferrel Decl. ¶¶ 12-13.

The Tax Division withheld all or portions of most documents pursuant to 5 U.S.C. Section 552(b)(5) which exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." While the case law recognizes a number of privileges which may be invoked by use of this exemption, tax withheld documents under the attorney work-product and deliberative process privileges.  Id. ¶ 20.

The materials withheld squarely meet both prerequisites to the assertion of the work-product privilege.  First, the grand jury and prosecution recommendations of the I.R.S. attorneys and the Tax Division prosecution memorandum; review notes; and letters and memoranda concerning handling the case were all generated in anticipation of criminal litigation against the

-64-

subjects of the investigation.  Second, they were all prepared by attorneys to aid in the determination whether to authorize participation in the on-going grand jury investigation and prosecution as to some of the targets of the investigation.  As the memoranda flow up from the I.R.S. to the ultimate decision makers in the Tax Division, different attorneys will have different opinions regarding the theory of prosecution and the strengths of the government's case.  As in <u>Firestone Tire and Rubber Co. v. Department of Justice</u>, 81-2 USTC ¶ 9670 (D.D.C. 1981) <u>aff'd memo.</u>, 675 F.2d 1340 (D.C. Cir 1982),  these recommendations have been withheld in full or in part because factual material analyzed by these attorneys, as well as their opinions and recommendations regarding the merits of the case and prosecution, are protected by the work-product privilege. Documents withheld in full under this privilege are Doc. No. 36 in D.J. File 5-52-15225; Doc. No. 33 in D.J. File 5-52-18439; and Doc. 11 in D.J. File 5-52-18439.  Disclosing this type of material would chill the kind of candid, detailed prosecutorial evaluations necessary to effective and efficient law enforcement. The work-product privilege was created, in part, to prevent just this kind of impairment in the litigation process.  The material withheld discusses specific questions of law and relevant facts related to anticipated prosecutions and reflects the mental impressions and legal theories and opinions of the author.  <u>Id</u>. ¶ 21.

　　　　The TAX Division also withheld documents on the grounds of

the deliberative process privilege. Items withheld under the deliberative process privilege must meet two tests. First, the document must be predecisional, prepared prior to the adoption of a final agency decision. Second, the document must be deliberative, it must play a direct part in the give and take of the decision-making process by making recommendations or expressing opinions on legal or policy matters. A review of the process in which the withheld documents were produced, paragraphs 5-10, supra, clearly shows that these documents meet both these tests. Id. ¶¶ 22-23.

As described, the Tax Division must authorize grand jury investigations into tax crimes. I.R.S. agents, serving as grand jury agents, will develop evidence and make recommendations on specific prosecutions to I.R.S. Regional or District Counsel. These counsel, who lack authority to initiate prosecutions, in turn, make specific prosecution recommendations to the Tax Division. Line attorneys in the Tax Division review the reports and recommendations. Following his or her analysis and sometimes a taxpayer conference, the line attorney, who lacks authority to initiate prosecutions, makes a prosecution recommendation. This recommendation is then reviewed by senior or supervisory attorneys in the Tax Division. The predecisional nature of these documents is underscored by the fact that each document was prepared by a person without authority to make the final agency decision for a senior person in the decision-making hierarchy. All of these recommendatory materials are therefore predecisional

and protected by the deliberative process privilege.  Id. ¶ 24.

The Tax Division withheld the following three categories of materials on the grounds of deliberative process privilege listed in the order in which they appear in the deliberative process described:

a)  I.R.S recommendations to authorize grand jury investigations;

b)  Tax Division documents concerning handling the investigation;

c)  I.R.S. prosecution recommendations; and

d)  Tax Division prosecution recommendations prior to a final decision to prosecute.

Id. ¶ 25.

### 4.   EOUSA Properly Applied Exemption 5 to Requests 05-3743-R and 06-546-R

**A. Request 05-3743-R**

Exemption (b)(5) of the FOIA exempts from disclosure privileged documents, which are not ordinarily available to a party in litigation.  The three primary privileges most frequently invoked in applying this exemption are: attorney work product, deliberative process, and attorney-client privilege.  Kornmeier Decl. ¶ 12.

EOUSA asserts Exemption (b)(5) to protect information pursuant to the attorney work product and deliberative process privileges. Id. ¶ 13.  The records to which the attorney work product privilege is applied reflect such matters as evaluations

and legal opinions pertinent to Mr. Graziano's and related criminal cases.  The records were prepared by an attorney or at an attorney's request or direction, and made in anticipation of or during litigation.  The substance of the records are such as to be exempt from disclosure pursuant to this privilege.  Id. ¶ 14.

In addition, these same records, in certain instances, contain deliberative process of the U.S. Attorney's office in communicating with the U.S. Marshals Service on Mr. Graziano's case.  To disclose this information would reveal pre-decisional communications among government personnel (i.e., discussions of various litigation issues, alternatives, and strategies), which would jeopardize the candid and comprehensive considerations essential for efficient and effective agency decision-making. The attorney work product and deliberative process are so interwoven as to make it all, in essence, attorney work product. Id. ¶ 15.

### B. Request 06-546-R

EOUSA asserts Exemption (b)(5) to protect information pursuant to the attorney work product and deliberative process privileges. The records to which the attorney work product privilege is applied reflect such matters as trial preparation, trial strategy, interpretations, and personal evaluations and opinions pertinent to Mr. Graziano's case.  The records were prepared by an attorney or at an attorney's request or direction,

and made in anticipation of or during litigation.  The substance

of the records are such as to be exempt from disclosure pursuant

to this privilege.  Kornmeier Decl. ¶¶ 29-30.

In addition, these same records, in certain instances,

contain deliberative process of the U.S. Attorney's office  in

considering possible criminal actions against Mr. Graziano and

others.  To disclose this information would reveal pre-decisional

communications among government personnel (i.e., discussions of

various litigation issues, alternatives, and strategies), which

would jeopardize the candid and comprehensive considerations

essential for efficient and effective agency decision-making.

The attorney work product and deliberative process are so

interwoven as to make it all, in essence, attorney work product.

Id. ¶ 31.

## K.    Defendants USPS, Criminal, and FinCEN (Consulting Agency) Properly Applied Exemption 6

Exemption 6 permits the government to withhold all

information about individuals in "personnel and medical files and

similar files" when the disclosure of such information "would

constitute an unwarranted invasion of personal privacy."  See 5

U.S.C. § 552(b)(6).

The threshold issue to be determined in the application of

Exemption 6 was firmly established in U.S. Dept. of State v.

Washington Post Co., 456 U.S. 595 (1982).  The Supreme Court made

clear that all information that "applies to a particular

individual" meets the threshold requirement for protection under

Exemption 6.  Id. at 602.

"The next step under Exemption 6 involves identifying the
relevant privacy interests in non-disclosure and the public
interests in disclosure, and determining 'whether, on balance,
disclosure would work a clearly unwarranted invasion of personal
privacy.'" Reed v. NL.R.B., 927 F.2d 1249, 1251 (D.C. Cir. 1991)
(quoting National Ass'n of Retired Federal Employees v. Horner,
879 F.2d 873, 875 (D.C. Cir. 1989) cert. denied, 494 U.S. 1078
(1990).  "The phrase 'clearly unwarranted invasion of personal
privacy' enunciates a policy that will involve a balancing of
interests between the protection of an individual's private
affairs from unnecessary public scrutiny, and the preservation of
the public's right to governmental information." Department of
Air Force v. Rose, 425 U.S. 352, 372 (1976).

### 1.   **USPS Properly Applied Exemption 6**

USPS withheld 76 records in full and made deletions on 62 of
the 124 pages released to the plaintiff pursuant to Exemption 6.
This provision exempts from mandatory disclosure information
about individuals in personnel and medical files and similar
files when the disclosure of such information "would constitute a
clearly unwarranted invasion of personal privacy."  This
exemption was applied to protect information about third-party
individuals whose personal information appears in the records.
Freeman Decl. ¶¶ 13-15.

### 2.   **Criminal Properly Applied Exemption 6**

-70-

Pursuant to Exemptions 6 and 7(C), the Criminal Division's FOIA/PA Unit withheld:

▸ From Items 3,5,7,9,11,13&17 - the phone number, name, and address of targets of the application for interception of wire communications, as well as the names of additional individuals who are the subjects of criminal extortion, illegal gambling, RICO, and aiding and abetting investigation;

▸ From Items 6,8,10,12,14&15 - the phone number, name, and address of targets of the application for interception of wire communications of criminal extortion, illegal gambling, RICO, and aiding and abetting investigation;

▸ From Items 18,20,21,22,23&24 - the phone number, name, and address of targets of the application for interception of wire communications of criminal extortion, illegal gambling, RICO, and aiding and abetting investigation; and

▸ From Item 26 - names of target suspects who are recommended for wire interception regarding criminal extortion, illegal gambling, RICO, and aiding and abetting investigation.

The individuals whose identities were withheld, as set forth above, were not the requester.  Hsu Decl. ¶ 31.

These items were complied in connection with a major criminal investigation into violations of federal extortion, illegal gambling, Racketeer Influenced and Corrupt Organizations statute, aiding and abetting in violation of 18 U.S.C. 2,892, 893, 894, 1343, 1955, 1962, and 1963; and, as such, meet the threshold requirement of FOIA Exemption 7 of "records or information complied for law enforcement purposes."  Id. ¶ 35.

In this case the individuals whose identities have been protected were either the subjects of the criminal investigation, the targets of the applications for interception of wire communications, or other individuals referenced in conjunction

with the investigation and the intercepted communications.  Id. ¶ 36.

The individuals whose identities have been protected all maintain a substantial privacy interest in not being identified with a criminal law enforcement investigation.  Identifying individuals as either the subjects of criminal investigations or being associated with such investigations can subject them to innuendo, embarrassment, and stigmatization or even harassment, retaliation and reprisals.  Id. ¶ 37.

On the other hand, revealing such information is unlikely to add to the public's understanding of how an agency works or how well it performs its statutory duties.[17]  On balance, the FOIA/PA Unit determined that the substantial privacy interest which is protected by withholding this information outweighs any minimal public interest which would be served by its release.  Such disclosure would be "clearly unwarranted" as required by 5 U.S.C. § 552(b)(6).  Since this is the higher of the two standards of invasion of privacy, the release of this information also would be "unwarranted" as required by 5 U.S.C. § 552(b)(7)(C).  Id. ¶ 38.

### 3.   FinCEN Properly Applied Exemption 6

---

[17]  Official information that sheds light on an agency's performance of its statutory duties falls squarely within the statutory purpose of the FOIA.  That purpose is not fostered, however, by disclosure of information about private citizens that reveals little or nothing about an agency's own conduct.  See United States Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 748, 773, 109 S.Ct. 1468, 1481-82 (1989).

Exemption (b)(6) was applied to withhold the identity of the third-parties who are identified in the results of the research conducted for law enforcement purposes. Release of this identifying information could subject third-parties to harassment. FinCEN identified no public interest in the release of this information that would counterbalance the analyst's right to privacy. Smith Decl. ¶ 13.

## L.    DEA and FinCEN (Consulting Agency) Properly Applied Exemption 7(A)

Exemption 7(A) authorizes agencies to withhold "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552 (b)(7)(A). In defending an Exemption 7(A) withholding, the agency must show that (1) a law enforcement proceeding is pending, or reasonably regarded as prospective, see Manna v. United States Dep't of Justice, 51 F.3d 1158, 1164 (3rd Cir. 1995), or as preventative, see, e.g., Moorefield. v. United States Secret Serv., 611 F.2d 1021, 1026 (5th Cir. 1980), and (2) that the release of the information could reasonably be expected to cause some articulable harm. See Manna, 51 F.3d at 1164. An articulable harm occurs "whenever the government's case in court would be harmed by the premature release of evidence or information," Nat'l Labor Relations Board v. Robbins Tire & Rubber Co., 437 U.S. 214, 232 (1978), or when disclosure would impede any

-73-

necessary investigation prior to the enforcement proceeding.
Dickerson v. U.S. Dep't of Justice, 992 F.2d 1426, 1429 (6th Cir.
1993).

Once the first threshold requirement is satisfied, the
agency must establish that the release would result in an
articulable harm.  To satisfy this burden, the agency must
provide at least a general description of the types of documents
at issue sufficient to indicate the type of interference
threatening the law enforcement proceeding.  Curran v. U.S. Dep't
of Justice, 813 F.2d 473, 475 (1st Cir. 1987); Spannaus v. U.S.
Dep't of Justice, 813 F.2d 1285, 1287 (4th Cir. 1987) (holding
that a categorical description of the withheld material is
sufficient because any further details "would lead to disclosure
of the very information sought to be protected").

The investigations documented in two of the three
investigative files processed by DEA are open investigations.
All of the responsive pages found in the two files were withheld
in their entirety pursuant to exemption 7(A).[18]  Release of any
information from the two investigative files could interfere with
the ongoing proceedings in each investigation.  Wassom Decl. ¶
48.

1. **FinCEN Properly Applied Exemption 7(A)**

---

[18] Because the Court of Appeals has instructed that agencies must
generally assert all exemptions in the District Court or risk
being precluded from asserting them, see Maydak v. U.S. Dept. of
Justice, 218 F.3d 760, 769 (D.C. Cir. 2000), Defendants have
asserted and documented other FOIA Exemptions in addition to
Exemption 7(A).

FinCEN determined that the ten pages containing records originating from FinCEN are appropriately withheld under b(7)(A) on the basis that the content pertains to an open investigation and its release could reasonably interfere with the ongoing proceedings in the investigation.  Smith Decl. ¶ 14.

## M.    Defendants USNCB, BOP, Criminal, Tax, DEA, FinCEN (Consulting Agency), EOUSA, USMS, USPS, ATF Properly Applied Exemption 7(C)

Exemption 7(C) of the FOIA exempts from mandatory disclosure information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  The Supreme Court has affirmed the broad scope of Exemption 7(C) in National Archives and Records Admin. v. Favish, 541 U.S. 157 (2004) (upholding application of Exemption 7(C) and recognizing substantial privacy interests of federal and non-federal law enforcement officer and other government employees).  When a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies."  Keys v. U.S. Dept. of Justice, 830 F.2d 337, 340 (D.C. Cir. 1987) (citing Pratt v. Webster, 673 F.2d 408, 418 (D.C. Cir. 1982)).  A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least "a colorable claim" of its rationality.'"  Keys, 830 F.2d at 340 (quoting Pratt v. Webster, 673 F.2d 408, 421 (D.C. Cir. 1982)).

Once the agency has demonstrated that the records were compiled for law enforcement purposes, the Court must next consider whether the release of information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  This determination necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files.  See, e.g., Favish, S. Ct. at 1580-82; U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 776-80 (1989).

The Supreme Court has made clear that "whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny,' Department of Air Force v. Rose, 425 U.S. 352, 372 (1976), rather than on the particular purpose for which the document is being requested." Reporter's Committee, 489 U.S. at 772 (internal quotation marks omitted). Information that does not directly reveal the operations or activities of the government "falls outside the ambit of the public interest that the FOIA was enacted to serve." Id. at 775. That public interest is to "shed[] light on an agency's performance of its statutory duties." Id. at 772. The plaintiff bears the burden of establishing that the "public interest in disclosure is both significant and compelling in order to overcome legitimate privacy interests." Perrone v. F.B.I., 908 F. Supp. 24, 26 (D.D.C. 1995), citing Senate of the Com. of

-76-

Puerto Rico on Behalf of Judiciary Committee v. Department of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987).

Significantly, it is the "interest of the general public and not that of the private litigant" that matters. Brown v. Federal Bureau of Investigation, 658 F.2d 71, 75 (2d Cir. 1981). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" Davis v. Department of Justice, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting Reporters Committee, 489 U.S. at 773 (internal quotation marks omitted). Further, courts have explicitly recognized that the privacy interests of third parties mentioned in law enforcement files are "substantial," while "[t]he public interest in disclosure (of third-party identities)is not just less substantial, it is insubstantial." SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1205 (D.C. Cir. 1991). Our court of appeals has held "categorically" that "unless access to names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." SafeCard Services, 926 F.2d at 1206.

Exemption 7(C) consistently has been held to protect the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations. Reporters Committee, 489 U.S.

-77-

at, 780); Computer Professionals for Social Responsibility v.
U.S. Secret Service, 72 F.3d 897, 904 (D.C. Cir. 1996) (noting
"'strong interest of individuals, whether they be suspects,
witnesses, or investigators, in not being associated
unwarrantedly with alleged criminal activity,'" quoting
Dunkelberger v. Department of Justice, 906 F.2d 779, 781 (D.C.
Cir. 1990).  Indeed, an agency may categorically assert Exemption
7(C) to protect the identities of witnesses or other persons
mentioned in law enforcement files in such a way as to associate
them with criminal activity.  Reporters Committee, 489 U.S. at
780; Nation Magazine, Washington Bureau v. U.S. Customs Service,
71 F.3d 885, 893, 895-96 (D.C. Cir. 1995); SafeCard Services, 926
F.2d at 1206.

      Likewise, the names of law enforcement officers who work on
criminal investigations have traditionally been protected against
release by Exemption 7(C).  Davis, 968 F.2d at 1281; Lesar v.
U.S. Dept. of Justice, 636 F.2d 472, 487-88 (D.C. Cir. 1980).
Similarly, individuals who provide information to law enforcement
authorities, like the law enforcement personnel themselves, have
protectable privacy interests in their anonymity.  Computer
Professionals for Social Responsibility, 72 F.3d at 904; Farese
v. U.S. Dept. of Justice, 683 F. Supp. 273, 275 (D.D.C. 1987).
The Vaughn index provided reflects clearly that Exemption 7(C)
was appropriately applied in this case to protect names and
personal information on individuals.

      1.    **USNCB Properly Applied Exemption 7(C)**

USNCB identified one electronic file consisting of five
pages with the plaintiff's name.  This was a master file which
had reference to his name, along with the names of multiple
criminal organizations and other individuals.  The file was
reviewed and a supplemental release was made to the plaintiff
with certain redactions of third-party information pursuant to
Exemption 7(C).  Beaty Decl. ¶¶ 9,10.

### 2.    **BOP Properly Applied Exemption 7(C)**

To invoke Exemption (b)(7), the BOP must be able to
demonstrate that records were compiled for law enforcement
purposes.  In this case, the records at issue were compiled for
law enforcement purposes during the course of its performance of
its law enforcement functions of protecting inmates, staff and
the community.   The records requested by plaintiff are part of
the Inmate Central Records System (JUSTICE/BOP-005).  As
previously stated, the Attorney General, as authorized by 5
U.S.C. § 552a(j)(2), has promulgated rules at 28 C.F.R. § 16.97,
exempting these records from the Privacy Act's access provisions.
Consequently, the records at issue are central to the BOP's
charge of carrying out its law enforcement functions.  Summers
Decl. ¶ 24.

Exemption § 522(b)(7)(c) of the FOIA exempts the mandatory
release of records or information compiled for law enforcement
purposes if such release could reasonably be expected to
constitute an unwarranted invasion of personal privacy.  The

information withheld from plaintiff pursuant to Exemption
(b)(7)(C), which was compiled by the BOP as part of its law
enforcement mandate, consists of personal information about third
parties.  Id. ¶ 25.

A further step in determining whether there would be a
"clearly unwarranted invasion of personal privacy" is to balance
the interests of protecting an individual's privacy and the
public's right to information concerning operation or activities
of the government.  In this case, release of the FOIA Exempt
records of third parties maintained in plaintiff's central file
will in no way shed light on any illegal government activities.
The privacy rights of the third parties, in this case inmate
separatees of plaintiff, far outweigh any public interest in the
release of the records.  In fact, the only interest that would be
served by release of the records would be plaintiff's.  The
records should legitimately be withheld under Exemption
(b)(7)(C).  Id. ¶ 26.

### 3.    Criminal Properly Applied Exemption 7(C)

Pursuant to 7(C), the Criminal Division's FOIA/PA Unit
withheld:

a.    From Items 3,5,7,9,11,13&17 - the phone number, name, and
      address of targets of the application for interception of
      wire communications, as well as the names of additional
      individuals who are the subjects of criminal extortion,
      illegal gambling, RICO, and aiding and abetting
      investigation;

b.    From Items 6,8,10,12,14&15 - the phone number, name, and
      address of targets of the application for interception of
      wire communications of criminal extortion, illegal gambling,
      RICO, and aiding and abetting investigation;

c.  <u>From Items 18,20,21,22,23&24</u> - the phone number, name, and address of targets of the application for interception of wire communications of criminal extortion, illegal gambling, RICO, and aiding and abetting investigation; and

d.  <u>From Item 26</u> - names of target suspects who are recommended for wire interception regarding criminal extortion, illegal gambling, RICO, and aiding and abetting investigation.

The individuals whose identities were withheld, as set forth above, were not the requester.  Hsu Decl. ¶ 31.

These items were compiled in connection with a major criminal investigation into violations of federal extortion, illegal gambling, Racketeer Influenced and Corrupt Organizations statute, aiding and abetting in violation of 18 U.S.C. §§ 2, 892, 893, 894, 1343, 1955, 1962, and 1963; and, as such, meet the threshold requirement of FOIA Exemption 7 of "records or information complied for law enforcement purposes."  <u>Id</u>. ¶ 35.

In this case the individuals whose identities have been protected were either the subjects of the criminal investigation, the targets of the applications for interception of wire communications, or other individuals referenced in conjunction with the investigation and the intercepted communications.  <u>Id</u>. ¶ 36.

The individuals whose identities have been protected all maintain a substantial privacy interest in not being identified with a criminal law enforcement investigation.  Identifying individuals as either the subjects of criminal investigations or being associated with such investigations can subject them to

innuendo, embarrassment, and stigmatization or even harassment, retaliation and reprisals.  Id. ¶ 37.

On the other hand, revealing such information is unlikely to add to the public's understanding of how an agency works or how well it performs its statutory duties.[19]  On balance, the FOIA/PA Unit determined that the substantial privacy interest which is protected by withholding this information outweighs any minimal public interest which would be served by its release.  The release of this information would be "unwarranted" as required by 5 U.S.C. § 552(b)(7)(C).  Id. ¶ 38.

### 4.   The Tax Division Properly Applied Exemption 7(C)

One document containing information on plaintiff was located in D.J. File 5-52-15901.  This file pertains to a third party who was also a subject of the grand jury investigation.  The document is a letter from an attorney who apparently represented the plaintiff and two (2) other persons. The information regarding the plea agreements of the other two (2) persons was withheld pursuant to Exemption 7(C) because its release could reasonably be expected to be an unwarranted invasion of personal privacy.  Ferrel Decl. ¶ 12.

Information pertaining to other persons who were targets of

---

[19]Official information that sheds light on an agency's performance of its statutory duties falls squarely within the statutory purpose of the FOIA.  That purpose is not fostered, however, by disclosure of information about private citizens that reveals little or nothing about an agency's own conduct.  See United States Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 748, 773, 109 S.Ct. 1468, 1481-82 (1989).

the grand jury investigation and the name of a Tax Division Data Management Specialist was withheld pursuant to primarily Exemptions 7(C) as disclosure would constitute an unwarranted invasion of personal privacy.  Id. ¶ 13.

Document 12 in D.J. File 5-52-18439 was released with the exception of the name of a reviewing attorney being withheld pursuant to Exemption 7(C).  Id. ¶ 14.

Numerous documents were withheld pursuant to 5 U.S.C. § 552(b)(7)(C) which exempts from disclosure "records or information complied for law enforcement purposes" whose release "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  These documents are clearly "records or information compiled for law enforcement purposes" because, as discussed, they were created during the course of grand jury investigations to explore allegations of possible violations of federal law, and as part of the prosecution process.  Names, addresses and phone numbers of federal employees were withheld.  Public servants retain a privacy interest in protecting their identities even when performing their official duties.  Public identification of them could subject them to harassment in connection with their employment and in their private lives.  This is especially true here where the files indicate plaintiff is a capo in the Bonnons organized crime family.  One document specifically notes that there was a court finding of the fact at a November 23, 1990 hearing in connection with plaintiff's plea agreement to his first criminal tax case.

-83-

Document 29 in D.J. Files 5-52-15456. Also for these reasons, Exemption 7(C) was applied to names of third parties and witnesses mentioned in responsive documents pertaining to the grand jury investigations and prosecutions of the plaintiff.

The files on plaintiff's second grand jury investigation indicated plaintiff used intimidation to become associated with at least one business for which he drew compensation but did little and at least one witness expressed fear of plaintiff. Based on review of the files, the privacy interests, particularly the privacy interest in avoiding embarrassment, annoyance and harassment, outweigh any public interest in the information. This is not the type of information which would shed light on an agency's performance of its statutory duties. Id. ¶ 27.

### 5. **DEA Properly Applied Exemption 7(C)**

In this instance, the plaintiff provided no facts to show any public interest for which any potential public interest would outweigh the privacy interests of the individuals. Thus, disclosure of the identities would be an unwarranted invasion of their personal privacy. Wassom Decl. ¶ 50.

In asserting this Exemption, each piece of information was examined to determine the degree and nature of the privacy interest of any individual whose name and/or identifying data appeared in the documents at issue. The public interest in disclosure of the information was determined by whether the information in question would inform the plaintiff or the general

public about DEA's performance of its mission to enforce Federal
criminal statutes and the Controlled Substance Act, and/or how
DEA conducts its internal operations and investigations.  In this
case, it was determined that there was no legitimate public
interest in the information withheld under Exemption b(7)(C), and
release of any information about a third party would constitute
an unwarranted invasion of that third party's personal privacy.
Id. ¶ 51.

The identities of DEA Special Agents, and other Federal,
state/local law enforcement officers and personnel were withheld.
Releasing their identities and information pertaining to these
individuals would place the Special Agents, and other law
enforcement officers and personnel in a position that they may
suffer undue invasions of privacy, harassment and humiliation
from disclosure of their identities in the context of a criminal
law enforcement investigatory file.  Id. ¶ 52.

The Special Agents and other law enforcement officers and
personnel were assigned to handle tasks relating to the official
investigation into the criminal activities of the plaintiff and
other individuals.  They were, and possibly still are, in
positions of access to information regarding official law
enforcement investigations.  If their identities are released,
they could become targets of harassing inquiries for unauthorized
access to information pertaining to ongoing and closed
investigations.  There is no public interest to be served by
releasing the identities of these individuals.  Id. ¶ 53.

Government employees were assigned to handle tasks relating to the official investigation into the criminal activities of the plaintiff.  They were, and possibly still are, in positions of access to information regarding official law enforcement investigations.  If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations. Also, release of their identities would constitute an unwarranted invasion of their personal privacy.  There is no public interest to be served by releasing the identities of government employees. Id. ¶ 54.

### A.  FinCEN Properly Applied Exemption 7(C)

The information obtained by DEA from FinCEN as compiled for law enforcement purposes.  The release of this information could subject third-parties to an unwarranted invasion of their personal privacy.  Release of identifying information with respect to third-parties could result in unwanted and even unlawful efforts to gain further access to such persons or to personal information about them, or cause them harassment, harm, or exposure to unwanted and/or derogatory publicity and inferences arising from their connection to a law enforcement investigation, all to their detriment.  Smith Decl. ¶ 16.

Because of the serious risk of harassment and even bodily harm to third-parties that the release of personally identifying information about such persons could cause, such information should be withheld under FOIA.  There is no public interest in

the release of this information that would counterbalance the individuals' privacy rights in the information withheld under this Exemption.  Id. ¶ 17.

### 6.  __EOUSA Properly Applied Exemption 7(C)__

### A. Request 05-3743-R

All information at issue in this case was compiled for law enforcement purposes. It was compiled to prosecute a criminal case.  EOUSA determined that there is no public interest in the release of this information because dissemination of the information would not help explain the activities and operations of  EOUSA.  No public interest would counterbalance the individuals' privacy right in the information withheld under this Exemption. Indeed, Mr. Graziano provided EOUSA with no authorizations or consents from any third party individual to release otherwise personal privacy protected materials. Kornmeier Decl. ¶¶ 16,19.

### B. Request 06-546-R

All information at issue in this case was compiled for law enforcement purposes. It was compiled to prosecute a criminal case. EOUSA determined that there is no public interest in the release of this information because dissemination of the information would not help explain the activities and operations of  EOUSA.  No public interest would counterbalance the individuals' privacy right in the information withheld under this Exemption. Indeed, Mr. Graziano provided EOUSA with no

authorizations or consents from any third party individual to
release otherwise personal privacy protected materials.
Kornmeier Decl. ¶¶ 32,35.

### 7. USMS Properly Applied Exemption 7(C)

This exemption was applied to withhold only the names of
and/or information pertaining to federal law enforcement
personnel, the names of and/or information pertaining to other
prisoners, and names and/or information pertaining to third party
individuals.  Plaintiff presents no public interest to warrant
disclosing the names of law enforcement personnel, nor does the
USMS believe that public disclosure of this information is
warranted.  Indeed, there is a legitimate public interest in
promoting the efficient performance of official duties which is
fostered by shielding government employees from unnecessary
public attention, harassment, or annoyance of their performance
of official duties.  Therefore, the public interest weighs in
favor of non-disclosure to foster privacy and the efficient
performance of official law enforcement duties regarding criminal
investigations and/or proceedings.  Bordley Decl. ¶ 9.

Exemption 7(C) was applied to withhold information
pertaining to and identifiable to other prisoners and third party
individuals.  Plaintiff has presented no public interest to
warrant disclosing the names and information identifiable to
other prisoners and third party individuals.  Release of this
information could expose these individuals to unnecessary public
attention, criticism, harassment or embarrassment for having been

associated with criminal law enforcement activities.  The USMS determined that no legitimate interest would be served by disclosure of this information.  Id. ¶ 10.

A description of the documents released to plaintiff with excisions made to certain documents pursuant to 7(C) is provided as follows:

> Item 1:    USMS-312, Personal History dated March 21, 2002-
>            name and information of a third party individual.
>
> Item 2:    USMS-129, Individual Custody and Detention Report
>            dated July 15, 2005- name and telephone number of
>            law enforcement personnel, and name and
>            information pertaining to other prisoners.
>
> Item 3:    USMS-312, Personal History dated July 15, 2005-
>            name and telephone extension of law enforcement
>            personnel, and the name and information pertaining
>            to other prisoners.
>
> Item 4:    Movement/ Transportation Printout dated April 12,
>            2002-Name of governmental personnel.
>
> Item 5:    Financial Information Printout dated March 19,
>            2002-Name of government personnel
>
> Item 6:    Movement/ Transportation Printout dated June 6,
>            2002-Name of government personnel.
>
> Item 7:    Movement/ Transportation Printout dated June 24,
>            2002-Name of government personnel.
>
> Item 8:    USMS-312, Personal History dated July 21, 2005-
>            name and information of third party individuals.

Id. ¶ 11.

### 8.   USPS Properly Applied Exemption 7(C)

The threshold of Exemption 7(C) was met because the files at issue were compiled for law enforcement purposes and they contained the identities and or addresses of individuals who were

not the target of the investigation.  The exemption was applied because the disclosure of the identities of these third parties could reasonably be expected to result in subjecting them to unnecessary harassment, intimidation and or physical harm.  For the most part, this means that names, addresses, telephone numbers (and, where applicable, other details which might reveal an identity) have been deleted from the records of the investigation of Mr. Graziano, and entire records, such as witness interviews, have been withheld where deletion of a name or other identifier would not be sufficient to protect the individual's identity.  The third parties protected from disclosure in this way include individuals that provided witness statement, individuals mentioned in the records as being potential leads, and non-postal law enforcement personnel, whether federal, state or local, who played some official role in the investigation and are identified in the records.  Freeman Decl. ¶ 15.

In all cases, the disclosure decision was made after balancing the public's right to know against the individual's right to privacy. USPS determined that there is no public interest in the information concerning third-party individuals, because it would not explain the activities and operations of the Inspection Service.  Therefore, there is no public interest that would outweigh the substantial privacy interests of the third-party individuals identified in the records.  Id.

### 9.    ATF Properly Applied Exemption 7(C)

ATF withheld the names and other identifying information related to third party individuals and law enforcement officers mentioned in the TECS printout.  ATF also invoked Exemption 7(C) to protect the identities of ATF special agents since disclosure might seriously prejudice their effectiveness in conducting investigations to which they are assigned or subject them to unwarranted harassment.  In determining whether to identify ATF special agents and other law enforcement personnel, ATF balanced the interest in disclosure against the individuals' privacy interest.  Plaintiff did not assert any discernible public interest in this particular type of information.  ATF determined that the privacy interests of law enforcement personnel substantially outweigh any public interest, and that the names of law enforcement personnel would not be disclosed.  Graham Decl. ¶ 14.

ATF also determined that the disclosure of this information could reasonably be expected to constitute an unwarranted invasion of these third party individuals' privacy, because being associated with ATF's criminal investigation into plaintiffs' unlawful actions carries a stigmatizing and negative connotation and could subject them to unwarranted harassment.  Thus, ATF determined that the third parties possess a substantial privacy interest in not having this information disclosed.  After the ATF identified the substantial privacy interest at stake, ATF balanced those interests against any public interest in the

disclosure.  ATF determined that because the disclosure of the names and identities of these third parties would not shed any light on ATF's activities, it could not identify any discernable public interest in the disclosure.  Id. ¶ 15.

**N.   Defendants Criminal, DEA, and USPS Properly Applied Exemption 7(D)**

Exemption 7(D) of the FOIA exempts from mandatory disclosure records or information compiled for law enforcement purposes if the disclosure:

> could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552 (b)(7)(D).  Exemption 7(D)'s "paramount objective" "is to keep open the Government's channels of confidential information." Birch v. United States Postal Serv., 803 F.2d 1206, 1212 (D.C. Cir. 1986).[20]

---

[20]  The term "confidential source" is very broad.  See, e.g., Gula v. Meese, 699 F. Supp. 956, 960 (D.D.C. 1988) (crime victims); Putnam v. United States Dep't of Justice, 873 F. Supp. 705, 716 (D.D.C. 1995) (medical personnel).  Moreover, the term "confidential" signifies that the information was provided in confidence or in trust, with the assurance that it would not be disclosed to others.  Dow Jones & Co. v. Department of Justice, 917 F.2d 571, 575-76 (D.C. Cir. 1990).  As such, "the question is not whether the requested document is of the type that the agency usually treats as confidential, but whether the particular source spoke with an understanding that the communication would remain confidential." United States Dep't of Justice v. Landano, 508 U.S. 165, 172 (1993).

When invoking Exemption 7(D), the agency must demonstrate that the information was compiled for a law enforcement purpose, that an informant provided the information under either an express or an implied promise of confidentiality and, under the first clause of 7(D), that disclosure could reasonably be expected to disclose the source's identity.  United States Dep't of Justice v. Landano, 508 U.S. 165, 171-72 (1993).  If an individual has not been given an express promise of confidentiality, the agency may demonstrate that a source has been given an implied promise of confidentiality based upon the circumstances of the case.  Landano, 508 U.S. at 179-80.  The government may establish implied assurances of confidentiality by describing "generic circumstances in which an implied assurance of confidentiality fairly can be inferred."  Id. at 179. However, once an agency establishes an express or implied promise of confidentiality, it is extremely difficult to overcome.  In order to do so, the plaintiff must come forward with "'absolutely solid evidence showing that the source . . . in a law enforcement investigation has manifested complete disregard for confidentiality.'"  Parker v. Department of Justice, 934 F.2d at 378, quoting Dow Jones & Co. v. Department of Justice, 908 F.2d 1006, 1011 (D.C. Cir.), reh'g denied en banc, 917 F.2d 571 (D.C. Cir. 1990).

The Court in Landano stressed two factors to be considered in determining whether an implied promise of confidentiality exists:  "the nature of the crime investigated and the witness'

-93-

relation to it." Id. at 181.  In applying these factors, a key
consideration is the potential for retaliation against the
source.  Id. at 179-180; see also, Williams v. FBI, 69 F.3d 1155,
1159 (D.C. Cir. 1995) (implied assurance of confidentiality found
where crimes investigated were serious and violent and sources
were "sufficiently close to" targets of investigation); Hale v.
Dept. of Justice, 99 F.3d 1025, 1031 (10th Cir. 1996).

Once the agency has demonstrated that information was given
by a confidential informant, Exemption 7(D) applies not only to
the name of the source, but to other information as well.  The
first clause of Exemption 7(D) not only protects obviously
identifying information, such as an informant's name and address,
but also all information which would tend to reveal the source's
identity.  Pollard v. FBI, 705 F.2d 1151, 1155 (9th Cir. 1983);
see also Stone v. Defense Investigative Serv., 816 F. Supp. 782,
788 (D.D.C. 1993) (protecting "information so singular that to
release it would likely identify the individual"); Doe v. U.S.
Dept. of Justice, 790 F. Supp. 17, 21 (D.D.C. 1992) (when source
is well known to individual investigated, agency must protect
"even the most oblique indications of identity").  The second
clause of Exemption 7(D) broadly protects all "information
furnished by a confidential source" to law enforcement
authorities in the course of a criminal or lawful national
security intelligence investigation.

Importantly, unlike some other FOIA exemptions, Exemption
7(D) does not require a balancing of public and private

interests.  <u>Parker v. Department of Justice</u>, 934 F.2d 375, 380
(D.C. Cir. 1991) (the "judiciary is not to balance interests
under Exemption 7(D)"); <u>Jones v. FBI</u>, 41 F.3d 238, 247 (6th Cir.
1994) ("[t]his exemption does not involve a balancing of public
and private interests; if the source was confidential, the
exemption may be claimed regardless of the public interest in
disclosure").  Therefore, "once the agency receives information
from a '"confidential source" during the course of a legitimate
criminal investigation . . . all such information obtained from
the confidential source receives protection.'" <u>Parker</u>, 934 F.2d
at 380 (editing by the court, <u>quoting</u> <u>Lesar v. United States</u>
<u>Dep't of Justice</u>, 636 F.2d 472, 492 & n. 114 (D.C. Cir. 1980)).
Moreover, Exemption 7(D) continues to apply even after an
investigation has been closed, <u>Ortiz v. HHS</u>, 70 F.3d 729, 733 (2d
Cir. 1995), <u>cert</u>. <u>denied</u>, 517 U.S. 1136 (1996), and after the
death of the source.  <u>Campbell v. Dept. of Justice</u>, 164 F.3d 20,
33 n.14 (D.C. Cir. 1998).

### 1.   **The Criminal Division Properly Applied Exemption 7(D)**

Pursuant to Exemption 7(D), the Criminal Division's FOIA/PA
Unit withheld, from Items 5, 7, 9, 13, and 26, various paragraphs
which set forth both the identities of confidential sources as
well as the specific information which these sources provided to
federal investigators.  These individuals' identities have also
been withheld under FOIA Exemptions 6 and 7(C).  Hsu Decl. ¶ 42.

These items were compiled in connection with criminal law
enforcement proceedings and thus meet the threshold requirement

of Exemption 7.  The FOIA/PA Unit personnel, who withheld this information under Exemption 7(D), determined that the information had been provided under circumstances where an assurance of confidentiality could reasonably be inferred.  The confidential sources were associated with a large racketeering, drug distribution, illegal gambling and extortion scheme involving the Bonanno Crime Family and the information, which these individuals provided, related directly to the criminal activity being investigated.  Therefore, the FOIA/PA Unit determined that disclosure of the source's identity as well as disclosure of the information provided by these individuals, which could reveal the individuals' identities, were properly withheld under Exemption 7(D).[21]  Id. ¶¶ 43,44.

## 2. DEA Properly Applied Exemption 7(D)

Each document or group of related pages that contain material provided by individual(s), other than a DEA agent, was examined in light of Exemption (b)(7)(D) to determine whether confidentiality was express or implied.  Wassom Decl. ¶ 56.

As an agency charged with law enforcement authority, DEA relied on the (b)(7)(D) Exemption to protect source-identifying and source-supplied investigative information.  The information at issue here pertains to coded confidential informants with express assurances of confidentiality and sources of information

---

[21]Moreover, all information in the five documents in which confidential source information is found is withheld in its entirety as attorney work-product material.

where implied and confidentiality applies.  Because of the nature
of DEA's criminal investigations, any information that could
identify these informants, including the informant identifier
codes, could subject them to serious harm, substantial
repercussions, and possibly even death.  Id. ¶ 57.

### EXPRESS CONFIDENTIALITY -CODED INFORMANTS

Coded informants are individuals who have a continuing
cooperative association, by written signed agreement, with DEA.
Such cooperative arrangements are established and maintained
according to DEA policy and procedure.  These individuals are
expressly assured confidentiality in their identities and the
information they provide to DEA.  They are also assured that
their names will not be used in DEA investigative materials.
They are assigned an identification code which is used in place
of their name or referred to as CI, SOI, or CS.  Id. ¶ 58.

Page 64 is the first page of a two-page ROI regarding the
career of a coded informant.  Pages 80 through 87 comprise the
first eight pages of a nine page ROI containing a debriefing of a
coded informant, who provided information about the criminal
activities, including drug trafficking, of the criminal
organization of which the plaintiff is a member.  Information
about the plaintiff is found in four paragraphs on page 81, in
four paragraphs on page 84, in one sentence on page 85, and is
mentioned in the Indexing Section on page 87.  Id. ¶¶ 59-60.

Page 89 through 92 comprise the first four pages of a five
page ROI containing a debriefing of a coded informant, who

provided information about the criminal activities, including drug trafficking, two inter-related criminal organizations, including the organization of which the plaintiff is a member. The plaintiff's name is mentioned only as the title on each of the pages.  Id. ¶ 61.

Pages 100 through 105 comprise the six pages of a seven page ROI containing a debriefing of a coded informant, who provided information about the criminal activities, including drug trafficking, of the criminal organization of which the plaintiff is a member.  Information about the plaintiff is found throughout the document.  Id. ¶ 62.

Page 107 is the first page of a two-page ROI containing a debriefing of a coded informant, who provided information about the criminal activities of a third party.  Information about the plaintiff is found in one paragraph.  Id. ¶ 63.

Pages 111 and 112 comprise a two-page ROI containing a debriefing of a coded informant, who provided information about a plan to commit a crime.  The plaintiff's name is mentioned in one sentence on page 112, as the file title on both pages, and in the Indexing Section on page 112.  Id. ¶ 64.

Pages 118 through 121 comprise a four-page ROI containing the debriefing of a coded informant, who provided information about the criminal activities, including drug trafficking, of the criminal organization of which the plaintiff is a member. Information about the plaintiff is found in two paragraphs on page 118, in two sentences on page 119, and he is mentioned in

the Indexing Section on page 121.  Id. ¶ 65.

Pages 122 and 123 comprise a two-page ROI containing a debriefing of a coded informant who provided information about the criminal activities of third parties.  Information about the plaintiff is found in one sentence on page 122, and his name is mentioned in the Indexing Section on page 123.  Id. ¶ 66.

## SOURCES WITH IMPLIED CONFIDENTIALITY

When it cannot be ascertained that source was found to have been expressly made a promise of confidentiality, such as the character of the crime being investigated, and the source's relation to the nature of the crime.  Id. ¶ 67.

The plaintiff was convicted of Racketeer Influenced and Corrupt Organizations (RICO) drug trafficking of cocaine and marijuana.  His DEA 210 also indicates that he was convicted of murder and racketeering.  The plaintiff is characterized as a member of an organized crime organization.  It is reasonable to infer that any individuals who provided information about the plaintiff would fear for their safety, since violence is inherent in the trade in illicit substances such as cocaine and marijuana, if their identities or the information they provided was revealed.  Additionally, release of the name of any sources could jeopardize DEA operations, since their cooperation and that of other similarly situated individuals could be needed in future criminal investigations.  Id. ¶ 68.

Pages 113 through 115 comprise the first three pages of a four-page ROI containing a proffer of a named confidential

source, who provided information about his/her criminal interactions with the plaintiff and third parties.  Id. ¶ 69.

Page 124 is the first page of a two-page ROI containing the case initiation of one of the plaintiff's DEA investigations. The page contains information from Cooperating Witnesses and Sources of Information about the drug trafficking activities of the plaintiff and third parties.  Id. ¶ 70.

### 3.    USPS Properly Applied Exemption 7(D)

The threshold for Exemption 7(D) was met by the USPS because the redacted and withheld information consists of the identities of confidential sources and the information they provided in the course of the criminal investigation of Mr. Graziano.  Revelation of these confidential sources could jeopardize future law enforcement cases and disclosure of the identities of these sources could reasonably be expected to result in subjecting them to unnecessary harassment, intimidation and or physical harm. Exemption 7(D) has been used in this case to protect the identities and statements of sources who provided information under an implied promise of confidentiality.  Considering that this case involves the commission of a serious crime, the person who made statements could reasonably infer that their statements would not be disclosed.  The latter portion of Exemption 7(D) protects all information furnished by confidential sources.  This portion of the exemption recognizes the reality that the identity of a source may often be determined by analyzing the information provided, a task often easily accomplished by someone familiar

with the facts and circumstances of the case.  Should this occur, the Inspection Service's ability to continue to obtain confidential information concerning suspected criminal activity would be impaired, and sources of information vital to its investigative and law enforcement functions would be imperiled. Therefore, the statements of all those who provide information to the Inspection Service under implied assurances of confidentiality are protected under 7(D).  Id. ¶ 15.

## O.    The Tax Division and FinCEN (Consulting Agency) Properly Applied Exemption 7(E)

Exemption 7(E) of the FOIA provides protection for all information compiled for law enforcement purposes when release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

"[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope." Mittleman v. Office of Personnel Management, 76 F.3d 1240, 1243 (D.C. Cir. 1996), cert. denied, 519 U.S. 1123 (1997) (citing Pratt v. Webster, 673 F.2d 408, 420 n.32 (D.C. Cir. 1982)).  When, however, a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." Keys v. U.S. Dept. of Justice, 830 F.2d 337, 340 (D.C. Cir. 1987) (citing

Pratt v. Webster, 673 F.2d 408, 418 (D.C. Cir. 1982)).  A
criminal law enforcement agency must simply show that "the nexus
between the agency's activity . . . and its law enforcement
duties" is "'based on information sufficient to support at least
"a colorable claim" of its rationality.'"  Keys, 830 F.2d at 340
(quoting Pratt, 673 F.2d at 421).

     The first clause of Exemption 7(E) affords "categorical"
protection for "techniques and procedures" used in law
enforcement investigations or prosecutions.  Smith v. Bureau of
Alcohol, Tobacco and Firearms, 977 F.Supp. 496, 501 (D.D.C. 1997)
(citing Fisher v. United States Dep't of Justice, 772 F. Supp. 7,
12 n. 9 (D.D.C. 1991), aff'd, 968 F.2d 92 (D.C. Cir. 1992)).
While Exemption 7(E)'s protection is generally limited to
techniques or procedures that are not well known to the public,
even commonly known procedures may be protected from disclosure
if the disclosure could reduce or nullify their effectiveness.
See, e.g., Coleman v. FBI, 13 F.Supp. 2d. 75, 83 (D.D.C. 1998)
(applying 7(E) to behavioral science analysis and details of
polygraph examination); Perrone v. FBI, 908 F.Supp. 24, 28
(D.D.C. 1995) (applying 7(E) to type of polygraph test, type of
machine used, polygraph questions and sequence).   In justifying
the application of Exemption 7(E) the agency may describe the
general nature of the technique while withholding the full
details.  See e.g. Bowen v. FDA, 925 F.2d 1225, 1228 (9th Cir.
1991).  The agency is not, however, required to describe secret
law enforcement techniques, even in general terms, if the

-102-

description would disclose the very information sought to be withheld. Coleman, 13 F.Supp. 2d at 83; Smith, 977 F.Supp. at 501.

Exemption 7(E)'s second clause separately protects "guidelines for law enforcement investigations or prosecutions if [their] disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Accordingly, this clause of the exemption protects any "law enforcement guideline" that pertains to the prosecution or investigative stage of a law enforcement matter whenever its disclosure "could reasonably be expected to risk circumvention of the law." See, e.g., PHE, Inc. v. United States Dep't of Justice, 983 F.2d 248, 251 (D.C. Cir. 1993) ("release of FBI guidelines as to what sources of information are available to its agents might encourage violators to tamper with those sources of information and thus inhibit investigative efforts"); Jimenez v. FBI, 938 F.Supp. 21, 30 (D.D.C. 1996) (applying 7(E) to gang-validation criteria used by Bureau of Prisons to determine whether individual is gang member).

In the instant case, two nearly identical documents were withheld in part pursuant to Exemption 7(E). Documents 7 and 9 in D.J. File 5-52-18439. The withheld portions contain information developed in the ongoing investigation of plaintiff and the Bonnon crime family by the United States Attorney's Office and consists of surveillance techniques used to obtain additional evidence that the crimes under investigation were much

more egregious than first thought.  Since the information was
clearly compiled for law enforcement investigations it was
withheld under Exemption 7(E).  Ferrel Decl. ¶ 28.

### 1.   FinCEN Properly Applied Exemption 7(E)

Exemption (b)(7)(E) was applied to withhold information
collected that identifies FinCEN as a research method utilized by
the DEA.  The techniques used in conducting research through
FinCEN for law enforcement purposes are not well known to the
public.  Law enforcement agencies rely on these techniques to
obtain information useful in conducting criminal investigations.
If this type of information were to be released, it would enable
individuals to avoid prosecution by structuring their activity in
such a way as to evade detection by law enforcement.  Smith Decl.
¶ 19.

### N.   Defendants BOP and DEA Properly Applied Exemption 7(F)

Title 5, United States Code, Section 552 (b)(7)(F)
(hereinafter Exemption 7(F)) protects from mandatory disclosure
information compiled for law enforcement purposes if disclosure
would reasonably be expected to endanger the life or physical
safety of any individual, 5 U.S.C. § 552 (b)(7)(F).  Courts have
consistently upheld the application of this exemption to protect
information identifying law enforcement officers, and special
agents who are especially likely to be in contact with violent
suspects.  Maroscia v. Levi, 569 F.2d 1000, 1002 (7th Cir. 1977);
Albuquerque Pub. Co., 726 F. Supp. 851, 858 (D.D.C. 1989); Docal

-104-

v. Bennsinger, 543 F. Supp. 38, 48 (M.D.Pa. 1981); Nunez v. Drug Enforcement Administration, U.S. Dept. of Justice, 497 F. Supp. 209, 212 (S.D.N.Y. 1980).  Although this Exemption applies to information that is also subject to the protection of Exemption 7(C), supra, there is no balancing required with the use of Exemption 7(F) and it is difficult to imagine any public interest that could outweigh the safety of an individual.

### 1.   BOP Properly Applied Exemption 7(F)

After careful consideration of the safety and security concerns of other individuals/inmates, the BOP determined that certain documents should be withheld pursuant to Exemption 7(F) as fully detailed and described in the attached Vaughn Index. Summers Decl. ¶ 27.

### 2.   DEA Properly Applied Exemption 7(F)

The names of DEA Special Agents, Supervisory Special Agents, Federal Bureau of Investigation (FBI) Special Agents, other Federal law enforcement personnel, state/local law enforcement officers, and confidential sources of information, were withheld in accordance with 5 U.S.C. § 552(b)(7)(F).  Exemption (b)(7)(F) sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to endanger the life or physical safety of an individual.  Wassom Decl. ¶ 71.

DEA Special Agents and Supervisory Special Agents, as well as members of other law enforcement entities, are frequently

-105-

called upon to conduct a wide variety of investigations, including sensitive and dangerous undercover operations.  Id. ¶ 72.

Special Agents routinely approach and associate with violators in a covert capacity.  Many of those violators are armed and many have known violent tendencies.  It has been the experience of DEA that the release of Special Agents' identities has, in the past, resulted in several instances of physical attacks, threats, harassment, and attempted murder of undercover and other DEA Special Agents.  It may, therefore, be reasonably anticipated that other law enforcement officers would become targets of similar abuse if they were identified as participants in DEA's enforcement operations.  Id. ¶ 73.

In addition, if the names of Special Agents and other law enforcement officers were released pursuant to the Freedom of Information Act, DEA would be releasing this data to the public realm.  DEA considers it to be within the public interest not to disclose the identity of Special Agents so that they may effectively pursue their undercover and investigatory assignments.  These assignments are a necessary element in support of DEA's objective–the suppression of the illicit traffic of narcotic and dangerous drugs.  Public disclosure of the identities of investigatory an other personnel, as well as confidential sources of information, would have a detrimental effect on the successful operation of DEA , as well as risk harassment and danger to its agents other law enforcement

personnel, and confidential sources of information.  This information was also withheld pursuant to Exemption (b)(7)(C). Id. ¶ 74.

**O.  <u>Segregability</u>**

_____The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue <u>sua</u> <u>sponte</u>." <u>Trans-Pacific Policing Agreement v. U.S. Customs Service</u>, 177 F.3d 1022, 1028 (D.C. Cir. 1999).  The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions."  5 U.S.C. § 552(b); <u>Mead Data Central, Inc. v. U.S. Dept. of Air Force</u>, 566 F.2d 242, 260 (D.C. Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements".  <u>Mead Data</u>, 566 F.2d at 261.  The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed.  <u>Id</u>.  All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated.  <u>Armstrong v. Executive Office of the President</u>, 97 F.3d 575, 578-79 (D.C. Cir. 1996). Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or

even sentences which taken separately or together have minimal or no information content." Mead Data, 566 F.2d at 261, n.55.

Defendants USMS, EOUSA, ATF, BOP, USNCB, USPS, Criminal, DEA, IRS, and TAX have produced all segregable information contained in their respective file records.  To demonstrate that all reasonably segregable material has been released, the agency must show "with reasonable specificity" why a document cannot be further segregated.  Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996).

Here, defendants found that no information was segregable from exemption information.  See Wassom Decl. ¶¶ 75-84, Bordley Decl. ¶ 12, Ferrel Decl. ¶¶ 17,22, Fogel Decl. ¶ 4, Hsu Decl. ¶ 29, Freeman Decl. ¶ 14, Beaty Decl. ¶ 10, Summers Decl. ¶ 34, Graham Decl. ¶ 9, Kornmeier Decl. ¶¶ 20,21,36 and Vaughn Indexes submitted therewith.  Because no non-exempt information was found in relation to documents withheld in full, it was not possible to further segregate.  Id.

### III.  CONCLUSION

Defendants Drug Enforcement Administration; Bureau of Alcohol, Tobacco, Firearms and Explosives; United States Marshals Service; United States Postal Inspection Service; Criminal Division; United States Bureau of Prisons; Internal Revenue Service; Tax Division; Interpol; United States Customs and Border Protection; Executive Office of the United States Attorneys; United States Secret Service; Central Intelligence Agency and National Security Agency; have demonstrated herein that they

responded properly to plaintiff's FOIA requests, releasing to him all records and portions thereof not exempted from disclosure. Accordingly, these defendants respectfully request that their Motion to Dismiss or for Summary Judgment be granted.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, DC Bar #451058
United States Attorney

_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney

_____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY GRAZIANO,                    )
                                     )
            Plaintiff,               )
                                     )
      v.                             )  Civil Action No. 06-36 RCL
                                     )
FEDERAL BUREAU OF                    )
    INVESTIGATION, <u>et</u> <u>al.</u>,  )
                                     )
            Defendants.              )
_____     )

### DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

Pursuant to Local Rule 7(h), the defendants hereby submit the following statement of material facts as to which there is no genuine issue. The declarations of the following officials support this statement:(1) Leila I. Wassom, Paralegal Specialist, Office of the Chief Counsel, Administrative Law Section Drug Enforcement Administration; (2) Gregory A. Smith, Disclosure Officer, Department of Treasury, Financial Crimes Enforcement Network (FinCEN)[1]; (3) Dorothy S. Beaty, Freedom of Information and Privacy Acts Specialist, Interpol - U.S. National Central Bureau; (4) Karen Summers, Paralegal Specialist, Federal Bureau of Prisons, South Central Regional Office; (5) Kathy Hsu, Attorney, Criminal Division, Office of Enforcement Operations; (6) John W. Kornmeier, Attorney Advisor, Executive Office for United States Attorneys; (7) Louis F. Giles, Director of Policy for the National Security Agency; (8) Scott A. Koch, Chief of the

_____

[1]This agency is not a named defendant; however, they were forwarded records for review by the DEA, which are the subject of this FOIA litigation.

Public Information Programs Division, Information Management
Services, Central Intelligence Agency; (9) Lynne Freeman,
Information Disclosure Technician, Office of Counsel for the
Postal Inspection Service; (10) William E. Bordley, Associate
General Counsel and Freedom of Information/Privacy Act Officer,
Office of General Counsel, United States Marshals Service; (11)
Mark Sullivan, Deputy Director of the United States Secret
Service, Department of Homeland Security; (12) Dorothy Pullo,
Supervisory Program Analyst, TECS/FOIA Customer Satisfaction
Unit, Office of Field Operations, United States Customs and
Border Protection and Shari Suzuki, Chief, FOIA Appeals, Policy
and Litigation Branch, Rulings and Disclosure Law Division,
Office of Regulations and Rulings, United States Customs and
Border Protection; (13) Averill P. Graham, Chief, Disclosure
Division, Bureau of Alcohol, Tobacco, Firearms and Explosives and
Johnny D. Rosner, Acting Chief Disclosure Division, Bureau of
Alcohol, Tobacco, Firearms and Explosives; (14) J. Brian Ferrel,
Senior Division Counsel, Civil Trial Section, Eastern Region of
the Tax Division; (15) Joel D. McMahan, Attorney in the Office of
Chief Counsel, Disclosure & Privacy Law, Internal Revenue Service
and Alan S. Fogel, Special Agent, Criminal Investigation Division
of the New York Field Office, Internal Revenue Service.

**I.   Drug Enforcement Administration (DEA)**

1. By letter dated June 11, 2005, the plaintiff requested
"all records."  The plaintiff specifically, wanted to "search the
criminal investigative files, which may have records compiled in

-2-

Palm Beach, Florida, and Brooklyn, NY." The plaintiff stated that he would pay reasonable search and reproduction fees. Declaration of Leila I. Wassom("Wassom Decl.")¶ 6, and Exhibit A.

2. By letter dated August 2, 2005, DEA acknowledged the plaintiff's request and informed him that it would be handled in approximate order of receipt. DEA stated that the letter confirmed the plaintiff's obligation as stated in his request letter to pay all applicable fees. Id. ¶ 7, and Exhibit B.

3. By letter dated September 13, 2005, to the Department of Justice's (DOJ) Office of Information and Privacy (OIP), the plaintiff stated that he was appealing the "action or inaction" of the DEA for "violation of FOIA time limits." Id. ¶ 8, and Exhibit C.

4. By letter dated October 12, 2005, DEA informed the plaintiff that his FOIA/PA request had been processed and that DEA was withholding 156 pages based on FOIA Exemptions (b)(2), (b)(3), (b)(7)(A), (b)(7)(C),(b)(7)(D), and (b)(7)(F), and the Privacy Act, 5 U.S.C. §552a(j)(2). Id. ¶ 9, and Exhibit D.

5. By letter dated October 20, 2005, OIP, the plaintiff stated that he was appealing the "action or inaction" of the DEA because it "has blanket denied release of records." Id. ¶ 10, and Exhibit E.

6. By letter dated November 10, 2005, OIP acknowledged receipt of the plaintiff's letter. Id. ¶ 11, and Exhibit F.

7. By letter dated February 22, 2006, OIP advised the plaintiff that it was closing his appeal file because he filed a

-3-

complaint for judicial review.  Id. ¶ 12, and Exhibit G.

8. By letter dated April 7, 2006, DEA advised the plaintiff that his FOIA request had been reviewed in conjunction with his lawsuit.  The letter stated that DEA determined there are references to the plaintiff in several investigative records and that those documents are in addition to the documents identified at the time of his FOIA request and withheld from release.  The letter stated that DEA will process those records upon the plaintiff providing confirmation that he will pay for the cost of search.  The letter indicated that the newly identified documents do not include documents created before 1992, because DEA's records show that the plaintiff made a FOIA request in 1992.  The letter gave the plaintiff the opportunity to state that he would like pre-1992 documents as well and that he would pay for the search for those documents.  The final paragraph of the letter stated that if the plaintiff does not respond within 30 days of the date he received the letter, DEA will presume that the plaintiff does not wish the DEA to process the documents that are the subject of this letter.  Id. ¶ 13, and Exhibit H.

9. By letter signed on May 10, 2006, DEA sent plaintiff another letter.  The May 10, 2006 letter was sent to the plaintiff's address on file with this Court and to the Federal Correctional Complex in Forrest City, Arkansas where, according to the web site of the Bureau of Prisons, the plaintiff had been relocated.  The May 10, 2006 letter stated that, pursuant to a litigation review, DEA is no longer asserting FOIA Exemption

-4-

(b)(7)(A) as a basis for withholding thirty-one (31) pages withheld at the request stage.  As a result, the letter stated, DEA enclosed portions of twelve (12) pages while continuing to withhold nineteen (19) pages in their entirety.  The letter indicated that the bases for the continued withholdings were FOIA Exemptions (b)(2), (b)(3), (b)(7)(C), and (b)(7)(F), and the Privacy Act, 5 U.S.C. § 552a(j)(2).  Id. ¶ 14, and Exhibit I.

10. The May 10, 2006 letter also stated that DEA had not yet received the plaintiff's response to the April 7, 2006 letter. The letter stated that it is estimated that the fee to search all the additional investigative records identified and discussed in the April 7, 2006 letter would be approximately $9,408.  The letter stated that, if the plaintiff wanted DEA to search only the records created in 1992 or later, the fee to conduct that search would be approximately $3,360.  Id. ¶ 15.

11. The May 10, 2006 letter, citing DOJ regulations located at 28 C.F.R. §16.11(i)(2), advised the plaintiff that DEA is requiring the plaintiff to make an advance payment of the estimated amount ($9,408 or $3,360) that corresponds with the option the plaintiff selects.  The letter also advised the plaintiff that, according to DOJ Rules located at 28 C.F.R. §16.11(i)(4), a FOIA request is not considered received and further work will not be done on it until the required payment is received.  Thus, the letter stated, only after receipt of the plaintiff's advance payment will DEA initiate further processing of his request.  The letter also notified the plaintiff that he

may reformulate his request to reduce the search and reproduction fees.  DEA provided examples of how he may reformulate his request.  Id. ¶ 16.

12. On May 23, 2006, DEA forwarded ten pages to the Department of Treasury, Financial Crimes Enforcement Network (FinCEN) for review and return to DEA.  On May 31, 2006, FinCEN responded to DEA, recommending withholding of the FinCEN information.  Id. ¶ 17.

**A.    Department of Treasury, Financial Crimes Enforcement Network (FinCEN)**

13. On May 23, 2006, DEA forwarded 10 pages to FinCEN and requested a review of the records originating at FinCEN that are the subject of litigation under the FOIA.  Declaration of Gregory A. Smith ("Smith Decl.) ¶ 5.

14. On May 31, 2006, FinCEN provided recommendations for withholding information under the FOIA to DEA.  FinCEN advised DEA that the information in the DEA record originating at FinCEN relates to third-party individuals, and is not releasable in accordance with the FOIA exemptions provisions 5 U.S.C. § 552(b)(3), 5 U.S.C. § 552(b)(6), 5 U.S.C. § 552(b)(7)(C), and 5 U.S.C. § 552(b)(7)(E).  Because there is a pending law enforcement proceeding relating to the people identified within this material, FinCEN is now asserting 5 U.S.C. § 552(b)(7)(A).  See Smith Decl. ¶ 14 and Wassom Decl. ¶ 48.  To date, FinCEN is not aware of any PA request or received written authorization for the Bank Secrecy Act (BSA) records derived from our records

-6-

relating specifically to third-parties, therefore the denial for release of these records is under FOIA in accordance with 5 U.S.C. § 552(b)(3). While FinCEN has not received a request to review these BSA records relating to third-parties, FinCEN also wishes to make known, at this time, that BSA [financial data] records are maintained in a system of records that is exempt from the access provisions of the Privacy Act in accordance with 5 U.S.C. § 552a(j)(2)and (k)(2).  Id. ¶ 6.

## II.  Interpol - U.S. National Central Bureau (USNCB)

15. By letter dated June 11, 2005 to the Department of Justice (DOJ), Interpol-U.S. National Central Bureau, the plaintiff asked to receive a copy of any and all documents, records and information that any part of our agency has or had in its possession that is in any way connected to, related to, or even remotely in reference to his name.  This request was received on July 14, 2005.  Declaration of Dorothy S. Beatty ("Beatty Decl.")¶ 7.

16. Upon receipt of plaintiff's request, a FOIA number 2005-0088 was assigned to it.  A new FOIA/PA request received at the USNCB is assigned a two part numerical identifier.  The first part is the year in which the request is received.  The second part is comprised of four digits which represent the order in which the request was received during the fiscal year. Plaintiff's FOIA request was assigned FOIA #2005-0088, indicating that his request was the eighty-eighth request received in fiscal year 2005.  Id. ¶ 8.

17. A search of the USNCB's system of records was conducted on July 14, 2005 and July 15, 2005. USNCB also conducted a physical search of the USNCB administrative files.  No responsive documents or records were located in the administrative files, however, there was an electronic file consisting of five pages which was identifiable with the plaintiff's name.  None of the pages were responsive to the plaintiff's request.  In searching the case summary of this file, it was ascertained that this was a master file which had reference to his name, along with the names of multiple crime organizations and other individuals.  After seeking guidance from OIP on July 15, 2005, it was determined there were no records.  Therefore, a "no records" letter was sent to the plaintiff on July 15, 2005.  Id. ¶ 9.

18. On September 19, 2005, the declarant received an email message from an attorney-advisor from OIP stating their office had received an appeal notification from the plaintiff appealing a "no records" response from the USNCB.  He requested that the declarant fax all background information (request letter, response letter, search slips) and anything else pertaining to the plaintiff's request.  The file was reviewed and copies made of its contents on September 29, 2005.  A supplemental release was made of the first and seventh page of the 15-page printout, removing the page numbering and the web address under Exemption (b)(2) and the third-party information under (b)(7)(C).  USNCB sent a letter to the plaintiff on September 30, 2005, along with the supplemental release.  A copy of the letter and supplemental

release were faxed to the OIP on the same date.  Id. ¶ 10.

19. On November 14, 2005, declarant received a copy of OIP's letter dated November 10, 2005 to the plaintiff acknowledging his administrative appeal from the action of INTERPOL-USNCB. Attached to this letter was a letter from the plaintiff to OIP appealing USNCB's withholding of information contained on the supplemental release.  Id. ¶ 11.

20. On November 25, 2005, the declarant received an email message from another attorney-advisor requesting the plaintiff's original request and the USNCB's response with the records withheld.  The declarant responded by directing her to the first attorney-advisor handling this case and by asserting that he had all the information associated with this FOIA file.  Nothing has been received from OIP since November 25, 2005.  Id. ¶ 13.

III. Federal Bureau of Prisons (BOP)

21. On or about October 4, 2005, plaintiff's FOIA request dated June 11, 2005, was received by the BOP's FOIA/PA Section in Washington, D.C.  The request (2006-00356) was forwarded to the BOP's South Central Regional Office (SCRO) for response. Plaintiff sought copies of his Central File, education, medical, mental health, ISM, and FOIA Exempt section of his Central File, including investigatory records of the SIS/SIA from FCC Beaumont and FCC Forrest City.  The request was interpreted as a request for all records pertaining to him that were maintained in his Central and Medical Files, SIS records and copies from the FOI Exempt section of his Central Files at his designated

-9-

institution, FCC Forrest City.  Declaration of Karen Summers ("Summers Decl.")¶ 4, and Attachment 1.

22. By letter dated October 18, 2005, plaintiff's request was accepted and acknowledged as received by the SCRO.  Plaintiff was advised that he could request copies and/or review of the releasable records (non "FOI Exempt") from his Central and Medical Files at the local (institution) level.  Plaintiff was informed that Inmate Systems Management (ISM) and education records are routinely forwarded to his unit team for incorporation into his Central File.  Id. ¶ 5, and Attachment 2.

23. On October 19, 2005, FCC Forrest City staff were informed that plaintiff was directed to request review or copies of the releasable documents from his Central and Medical Files. Additionally, staff were instructed to forward all FOI Exempt records maintained in plaintiff's Central File, as well as records maintained by the SIS/SIA, to the SCRO for review and release determination.  Id. ¶ 6, and Attachment 3. FCC Beaumont and FCC Forrest City staff indicated no SIA/SIS investigatory records were located pertaining to plaintiff.

24. On December 15, 2005, BOP staff provided plaintiff the opportunity to review and/or receive copies of his Central File records.  Plaintiff signed a receipt indicating he was provided access to his Central File but did not request any copies.  Staff indicate plaintiff previously reviewed these records prior to his formal FOIA request.  Additionally, plaintiff was informed he could submit a request to staff for review of his records.  Id. ¶

7, and Attachment 4.

25. On February 10, 2006, BOP staff provided plaintiff the opportunity to review and/or receive copies of his psychology records.  Plaintiff signed a receipt indicating he declined to review his psychology records.  Id. ¶ 8, and Attachment 5.

26. On February 10, 2006, BOP staff provided plaintiff the opportunity to review and/or receive copies of his Medical File records.  Plaintiff signed a receipt but declined to review or obtain copies of his medical records.  Id. ¶ 9, and Attachment 6.

27. By letter dated November 30, 2005, plaintiff was informed thirty nine (39) responsive documents, maintained in the "FOI Exempt" section of his Central File, were reviewed for release determination.  Id. ¶ 10, and Attachment 7.

28. A review of thirty nine (39) records revealed seven (7) pages were released in full; twenty three (23) pages were released with certain information excised pursuant to Title 5 U.S.C. §§ 552a(b)(2),(b)(5),(b)(7)(C), and (b)(7)(F); and nine (9) pages were withheld in their entirety pursuant to Title 5 U.S.C. §§ 552a(b)(2), (b)(7)(C), and (b)(7)(F).  Id. ¶ 11, and Attachment 7.

29. The FOIA release determination letter dated November 30, 2005, advised plaintiff that if he was dissatisfied with the BOP response he could appeal to OIP within 60 days.  Id. ¶ 16, and Attachment 7.

30. However, prior to plaintiff receiving the release determination response regarding his request for FOI Exempt

-11-

records, he appealed to OIP on November 23, 2005, alleging the BOP failed to provide any requested documents and/or to provide exemptions justifying the withholding of the records.  The BOP's (SCRO) release determination letter dated November 30, 2005, as well as copies of records, either in whole or in part, was mailed to plaintiff as noted above.  Id. ¶ 17, and Attachment 8.

31. By letter dated November 30, 2005, OIP acknowledged plaintiff's appeal and assigned Appeal Number 06-0552.  The declarant was informed by OIP staff that adjudication of the Appeal is currently pending.  Id. ¶ 18, and Attachment 9.

32.  On November 29, 2005, the United States Marshals Service (USMS) referred four (4) documents to the BOP's Central Office indicating they appeared to have originated or contained information of interest to the BOP.  The BOP's Central Office processed the referral and assigned the referral FOIA Request Number 2006-01986.  By letter dated January 6, 2006, plaintiff was provided two (2) of the pages (SENTRY Computerized data) in their entirety and two (2) pages (Statement of Reasons) were available to plaintiff at his current institution.  Id. ¶ 19, and Attachment 10.

**IV.  Criminal Division**

33. By letter dated June 11, 2005, plaintiff made a request to the Department of Justice, Criminal Division's FOIA/PA Unit for records concerning himself.  Although addressed to the Criminal Division, plaintiff's request was forwarded to the Justice Management Division who sent it to the Criminal

Division's FOIA/PA Unit.  Declaration of Kathy Hsu ("Hsu Decl.")
¶ 4, and Exhibit 1.

34. By a letter addressed to the Department of Justice,
Office of Information and Privacy (OIP) dated September 15, 2005,
plaintiff sought to administratively appeal his request to OIP
asserting that the FOIA/PA Unit had not responded to his request
(CRM-200500933P) within the time limits established by the
Freedom of Information and Privacy Acts.  Id. ¶ 5, and Exhibit 2.

35. By letter addressed to the plaintiff dated September 22,
2005, the Criminal Division acknowledged receipt of his request
and advised him that the request had not been received in proper
form and before further action could be taken in processing his
request additional information would be required from him.
Specifically, plaintiff was advised that the FOIA/PA Unit was
unable to search for the records requested because the plaintiff
had not furnished a "Privacy Act Identification and Request
Form," and he did not indicate on the Criminal Division's list of
systems of records form which systems of records maintained by
the Criminal Division he wanted searched.  Enclosed with the
September 2005 acknowledgment letter, the Criminal Division
attached the two forms for the plaintiff to complete; (1)"Privacy
Act Identification and Request Form" and (2) the Criminal
Division's Privacy Act Systems of Records Form.  Once completed
by plaintiff, these forms would provide the additional
information needed by the FOIA/PA Unit to thoroughly process his
request.  Additionally, the plaintiff was notified that his

-13-

request had been assigned case number CRM-200500933P, however, request CRM-200500933P would be closed and when the Criminal Division received the attached forms in completed form, the request would then be reopened under a different case number. Plaintiff was also notified in the letter of his administrative appeal rights should he treat the letter as a denial of his request. Id. ¶ 6, and Exhibit 3.

36. By letter dated September 25, 2005, the plaintiff returned the "Privacy Act Identification and Request Form" and the Criminal Division's Privacy Act systems of records form.  He indicated on the forms the systems of records he wanted searched and provided information about himself that would assist the Criminal Division in those searches.  Id. ¶ 7, Exhibits 4,5.

37. By letter dated October 5, 2005, OIP acknowledged receipt of plaintiff's September 15, 2005 letter seeking an administrative appeal for CRM-200500933.[2]  Plaintiff was advised that his administrative appeal was assigne[3]d number 06-0003 and that he would be notified of the decision of his administrate review once it was adjudicated.  Id. ¶ 8, and Exhibit 6.

38. By letter addressed to the plaintiff dated October 27, 2005, the Criminal Division acknowledged that it received from the plaintiff the "Privacy Act Identification and Request Form" dated September 25, 2005, and the list of systems of records he

---

[2]  Plaintiff exercised his right to file an administrative appeal prior to the Criminal Division's acknowledgment of his request.

wanted searched.  The plaintiff's FOIA/PA request was reassigned case number CRM-200501024P.  The plaintiff was further advised that the FOIA/PA Unit would conduct a search to determine what records the Criminal Division had that were within the scope of the request.  Id. ¶ 9, and Exhibit 7.

39. By letter dated December 29, 2005, OIP advised plaintiff that it had decided to affirm on modified grounds the Criminal Division's action regarding his June 2005 request (CRM-200500933).  Specially, OIP explained that plaintiff had not indicated the systems of records he wanted searched which would have assisted the FOIA/PA Unit in conducting a search for responsive records.  Plaintiff was also advised of his right to seek judicial review if he was dissatisfied with OIP's decision. Id. ¶ 10, and Exhibit 8.

40. By letter dated April 25, 2006, the FOIA/PA Unit responded to plaintiff's Privacy Act request of September 25, 2006, for access to records in his name and informed plaintiff that 26 Criminal Division records (Items 1-26) within the scope of his request were located.  Upon review it was determined that all records either required by statue, or considered appropriate as a matter of discretion would be released to him; specifically, items 1-2 and 19 would be released to plaintiff in full, items 3-18 and 20-24 in part, and items 25-26 would be withheld in full. Certain material was withheld pursuant to Exemptions 3, 5, 6, 7(C) and 7(D) of the FOIA (5 U.S.C. § 552(b)(3), (5), (6), 7(C) & 7(D)).  Moreover, the April 2006 letter advised plaintiff that

-15-

records which originated in the Executive Office for United States Attorneys, the Federal Bureau of Investigation, and the Bureau of Alcohol, Tobacco and Firearms were also located in Criminal Division files.  Pursuant to 28 C.F.R. § 16.4(c)(2), those records were referred to those agencies for review and direct response to plaintiff (these referrals were transmitted with a special cover memorandum specifying that the request was in litigation and should be expedited).  See, e.g., Rosner Decl. ¶ 5.  This letter also informed plaintiff that the FOIA/PA Unit was aware that the matter was currently in litigation, however, as required by statute and departmental regulations plaintiff was notified of his right to an administrative appeal.  Id. ¶ 11, and Exhibit 9.

41. By letter addressed to plaintiff from the FOIA/PA Unit dated May 12, 2006, plaintiff was advised that the April 25, 2006 response letter, had been supplemented and the FOIA/PA Unit determined that the initials of a Criminal Division employee which was withheld in item 16 can be disclosed to plaintiff.  A copy of item 16 was enclosed with the letter.  Id. ¶ 12, and Exhibit 10.

## V.   Executive Office for United States Attorneys (EOUSA)

42. By letter dated June 11, 2005, Mr. Graziano submitted a FOIA request to EOUSA asking for all his records with explicit instructions to search as follows: "Please search Palm Beach, Florida, and Brooklyn, NY district."  Declaration of John W. Kornmeier ("Kornmeier Decl.") ¶ 4, and Exhibit A.

-16-

43. EOUSA split his request into two files corresponding to the USAO's to be searched and assigned the following request numbers: #05-2168 Southern District of Florida, and #05-2169 Eastern District of New York.  Id. ¶ 5.

44. Based on information received from the two Districts which were to search for records, EOUSA determined that search fees would exceed $250.00.  Under Federal Regulation 28 C.F.R. § 16.11(i)(2), EOUSA may require advance payment when it estimates or determines that the fees will exceed $250.00.  By letter dated February 14, 2006, EOUSA notified Mr. Graziano that it had determined that fees were at least $868.00 and required an advance payment.  EOUSA gave Mr. Graziano an opportunity to reformulate his request to reduce fees.  EOUSA told Mr. Graziano that in accordance with 28 C.F.R. § 16.11(i), his request is not considered received until it received a response from him and that unless it heard from him within thirty days of the date of the letter, the matter would be closed.  Id. ¶ 6, and Exhibit B.

45. Mr. Graziano did not send the requested fee within the required thirty day time period nor did he respond with a reply to reformulate his request to reduce fees.  EOUSA accordingly closed requests 05-2168 and 05-2169.  Since Mr. Graziano refused to pay the fees under requests 05-2168 and 05-2169 required by Federal Regulations, he has failed to exhaust his administrative remedies.  Id. ¶¶ 7,8.

46. On December 16, 2005, EOUSA received a referral of six pages from the United States Marshal's Service for processing and

-17-

direct response to the requester, Mr. Graziano.  EOUSA assigned
number 05-3743-R to the request.  Id. ¶ 9.

47. Under cover of letter dated January 11, 2006, EOUSA
released three pages in full and one page in part, and withheld
two-pages in full.  Under cover of letter dated May 18, 2006,
EOUSA released the two-pages in part that were previously
withheld in full.  EOUSA withheld information under Exemption
(j)(2) of the PA, 5 U.S.C. § 552a(j)(2), and under Exemptions
(b)(5)and (b)(7)(C) of the FOIA, 5 U.S.C. § 552 (b)(5) and
(b)(7)(C).  Id. ¶ 10.

48. On February 16, 2006, EOUSA received a referral of 322
pages from the Criminal Division of the U.S. Department of
Justice for processing and direct response to the requester, Mr.
Graziano. EOUSA assigned number 06-546-R to the request.  Id. ¶
22.

49. By letter dated March 31, 2006, EOUSA released two-pages
in part and withheld 320 pages in full.  EOUSA withheld
information under Exemption (j)(2) of the PA, 5 U.S.C. §
552a(j)(2), and under Exemptions (b)(2), (b)(5), (7)(A) and
(b)(7)(C) of the FOIA, 5 U.S.C. § 552 (b)(2), (b)(5),(7)(A),
(b)(7)(C), EOUSA is currently asserting FOIA Exemptions (b)(3),
(b)(5), and (b)(7)(C).[3]  Id. ¶ 23.

**VI.  National Security Agency (NSA)**

---

[3] For this case, EOUSA is asserting additional FOIA Exemption
(b)(3).  EOUSA is not asserting FOIA Exemptions (b)(2), and
(b)(7)(A).

50. Plaintiff filed a FOIA request on June 11, 2005, which was forwarded to the Office of Policy on June 14, 2005. Plaintiff requested all records on himself, in anyway connected to, related to, or even remotely in reference to his name from the NSA.  Declaration of Louis F. Giles ("Giles Decl.") ¶ 5, and Exhibits 1,2.

51. By letter dated August 2, 2005, NSA responded to plaintiff's FOIA request.  NSA correctly informed plaintiff that it conducted a thorough search of its files, but that it could not, after a thorough search, locate any records that were responsive to his request.  In this letter, NSA advised plaintiff of his appeal rights.  Id. ¶ 6, and Exhibit 2.

52. By letter dated September 11, 2005, plaintiff filed an appeal of NSA's determination that it could not locate any records that were responsive to his FOIA request.  Id. ¶ 7, and Exhibit 3.

53. By letter dated March 17, 2006, plaintiff was informed that his appeal had been processed and denied.  Id. ¶ 8, and Exhibit 4.

**VII. Central Intelligence Agency (CIA)**

54. Plaintiff submitted a written FOIA/Privacy Act request to CIA dated June 11, 2005.  In his request, plaintiff asked for all records relating to the following name: Anthony Graziano. CIA assigned plaintiff's request reference number P-2005-00837. Declaration of Scott A. Koch ("Koch Decl.") ¶ 16, and Exhibit 1.

55. By letter dated September 8, 2005, CIA acknowledged

receiving plaintiff's June 11, 2005 letter.  <u>Id</u>. ¶ 17, and
Exhibit 2.

56. The CIA conducted diligent searches of relevant systems
of records that were reasonably calculated to discover any
records responsive to plaintiff's June 11, 2005 request.
Diligent searches failed to disclose any records.  <u>Id</u>. ¶ 18.

57. The CIA notified the plaintiff by letter dated September
27, 2005, that the Agency processed his request and found no
responsive records.  CIA also informed plaintiff that he had a
right to appeal the finding of the Agency Release Panel.  <u>Id</u>. ¶
19, and Exhibit 3.

58. By letter dated October 20, 2005, plaintiff exercised
his right to appeal CIA's final response.  On November 7, 2005,
CIA accepted plaintiff's appeal.  <u>Id</u>. ¶¶ 20,21, and Exhibits 4,5.

59. As part of plaintiff's appeal, the relevant components
conducted another thorough search and, once again, were unable to
locate any records pertaining to plaintiff.  <u>Id</u>. ¶ 22.

60. By letter dated February 16, 2006, CIA's Agency Release
Panel correctly notified plaintiff that "despite thorough and
diligent searches of the appropriate records systems, we were
unable to locate any records responsive to [plaintiff's]
request," and accordingly, denied plaintiff's appeal.  <u>Id</u>. ¶ 23,
and Exhibit 6.

**VIII.    U.S. Postal Inspection Service (USPS)**

61. By letter dated June 11, 2005, and received July 8,
2005, plaintiff made a FOIA request for copies of any and all

documents, records, and information that any part of the USPS had in its possession that was in any way connected or related to his name, in particular, all criminal investigatory and mail watch records in Palm Beach, FL and Brooklyn, NY.  Declaration of Lynne Freeman ("Freeman Decl.") ¶ 4, and Exhibit A.

62. By letter dated July 11, 2005, receipt of his request was acknowledged and plaintiff was informed that his request was assigned FOIA No. 2005-FIS-00165.  He was also advised that the search for responsive Inspection Service records and processing of the records would be delayed in order to conduct appropriate file searches.  Id. ¶5, and Exhibit B.

63. By letter dated August 24, 2005, plaintiff received a response to his request and was provided 124 pages of redacted record material.  In addition, plaintiff was advised of his right to appeal this determination and was provided a copy of the appeal procedures.  Id. ¶ 6, and Exhibit C.

64. By letter dated September 8, 2005, plaintiff appealed to his request for information.  Id. ¶ 7, and Exhibit D.

65. By letter dated September 30, 2005, the Office of the Chief Counsel notified plaintiff of its decision regarding his appeal.  The Chief Counsel correctly upheld the FOIA Exemptions 5 U.S.C. § 552(b)(2), (b)(6), (b)(7)(C), and (b)(7)(D).  Id. ¶ 8, and Exhibit E.

66. In response to the request at issue in this litigation, a review of the Postal Inspection Service documents was initiated.  During the review, it was determined that 124 pages

-21-

could be released to plaintiff.  Most of the 124 pages were
provided in their entirety and some pages have deletions
protected under FOIA Exemptions(b)(2), (b)(6), (b)(7)(C), and
(b)(7)(D).  An additional 76 pages were withheld in their
entirety.  The deletions are protected under FOIA Exemptions
(b)(2), (b)(6), (b)(7)(C), and (b)(7)(D).  Id. ¶¶ 9,10.

**IX.  United States Marshals Service (USMS)**

67. On July 14, 2005, the USMS Office of General Counsel
(OGC) received a letter dated June 11, 2005, by which plaintiff
requested a copy of all records pertaining to him.  Declaration
of William E. Bordley ("Bordley Decl.") ¶ 3, and Exhibit B.

68. A search for records pertaining to plaintiff was
conducted in the databases and paper files of the USMS district
offices for the locations identified in his request, i.e., the
Southern District of Florida and the Eastern District of New York
using plaintiff's name, date of birth, and prisoner registration
number as identifiers.  Id. ¶ 4.

69. As a result of this search, 57 pages of records
pertaining to plaintiff were located in Prisoner Processing and
Population Management/Prisoner Tracking System (PPM/PTS),
JUSTICE/USM-005, and the Warrant Information Network (WIN),
JUSTICE/USM-007, system of records.  Id. ¶ 5.

70. By letter dated November 29, 2005, the USMS responded to
plaintiff's request and informed plaintiff that after conducting
a search of its files, fifty-seven (57) pages of records had been
located which were indexed to plaintiff's name.  Of the fifty-

seven (57) pages located, thirty-eight (38) pages were disclosed to plaintiff in their entirety, six pages were referred to Bureau of Prisons (BOP), four pages were referred to the Executive Office for United States Attorney (EOUSA), and the remaining 9 pages were disclosed with minimal deletions pursuant to Exemption (b)(7)(C) of the FOIA, 5 U.S.C. § 552(b)(7)(C). <u>Id</u>. ¶ 6, and Exhibit C.

71. By letter dated December 5, 2005, plaintiff filed an administrative appeal of the USMS action on his request to the Department of Justice, Office of Information and Privacy (OIP). Plaintiff's administrative appeal letter asserted that the USMS withheld information by claiming certain exemptions. <u>Id</u>. ¶ 7, and Exhibit D.

72. By letter dated December 22, 2005, OIP acknowledged receipt of plaintiff's appeal. <u>Id</u>. ¶ 8, and Exhibit E.

**X.   United States Secret Service (USSS)**

73. By letter dated June 11, 2005, and received by the Secret Service FOI/PA office on July 14, 2005, plaintiff submitted to the Secret Service a FOI/PA request. Plaintiff's request was for all records maintained by the Secret Service concerning himself. Declaration of Mark Sullivan ("Sullivan Decl.") ¶ 4, and Exhibit A.

74. Pursuant to plaintiff's request, the FOI/PA Office conducted a search for responsive information. In order to conduct this search, the Secret Service FOI/PA Office first conducted searches for plaintiff's name, social security number,

-23-

and date of birth on the Secret Service's Master Central Index (MCI).  Id. ¶ 5.

75. The MCI search produced no reference to the name "Anthony Graziano."  Based on these searches the FOI/PA Office determined that it could locate no records responsive to plaintiff's FOI/PA request.  Id. ¶¶ 8,9.

76. By letter dated August 8, 2005, the Secret Service FOI/PA Office acknowledged receipt of plaintiff's request and correctly informed plaintiff that a search for files responsive to his request had been conducted and no records were found.  Id. ¶ 10, and Exhibit B.

77. By letter dated September 26, 2005, plaintiff filed an appeal.  On receipt of plaintiff's appeal a review of the initial search as conducted by the FOI/PA Office was completed.  This review included an additional MCI search and re-contact with the ISD.  This review again indicated no records were maintained by the Secret Service concerning plaintiff.  Id. ¶¶ 11,12.

78. By letter dated November 15, 2005, Mr. Sullivan's predecessor, Barbara S. Riggs, informed plaintiff that pursuant to his administrative appeal a review of the search conducted by the Secret Service FOI/PA Office had been completed.  This review found that a reasonable search had been conducted for records responsive to plaintiff's request and that a search did not produce any records concerning plaintiff's request.  Id. ¶ 13, and Exhibit C.

**XI.  United States Customs and Border Protection (CBP)**

79. On or about January 30, 2006, Dorothy Pullo reviewed the Office of Field Operations case tracking system for a TECS/FOIA request filed by Plaintiff as part of the CBP response to the above-captioned complaint. There was no record that appeared in this record system concerning any FOIA request by plaintiff made directly to the U.S. Customs Service (now CBP) or referred to CBP by another agency. Declaration of Dorothy Pullo ("Pullo Decl.") ¶ 3.

80. On or about January 30, 2006, Shari Suzuki reviewed the ORR Legal Case Inventory System (LCIS) for a FOIA appeal filed by plaintiff as part of the CBP response to the complaint. LCIS was searched based on the name of the requester. There was no record that appeared in this system concerning any FOIA appeal by plaintiff. Declaration of Shari Suzuki ("Suzuki Decl.") ¶ 4.

**XII. Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)**

81. On July 7, 2005, ATF's Disclosure Division received a FOIA request dated June 11, 2005 from plaintiff, in which he sought all records related to himself. Declaration of Averill P. Graham ("Graham Decl.") ¶ 5, and Exhibit A.

82. On August 10, 2005, the Disclosure Division made several queries of TECS in an attempt to attain responsive information. Queries were made using the plaintiff's first and last name, as provided in his June 11, 2005 request. Redacted copies of the results were provided to the plaintiff by ATF's October 14, 2005, release. Id. ¶ 6.

83. On September 29, 2005, the OIP, DOJ, received a FOIA

appeal dated September 17, 2005, in which the plaintiff indicated that he never received a response from ATF to his correspondence of June 11, 2005.  Id. ¶ 7, and Exhibit B.

84. By letter dated October 12, 2005, OIP acknowledged receipt of plaintiff's appeal dated September 17, 2005, and informed him that a response to his appeal would be forthcoming. Id. ¶ 8, and Exhibit C.

85. By letter dated October 14, 2005, ATF's Disclosure Division informed the plaintiff that his request was granted in part.  ATF informed the plaintiff that ATF was releasing the disclosable portions of the documents that contained exempt information and was withholding portions of the documents for the reasons indicated on the cover sheet to the documents.  ATF further advised plaintiff that the only documentation related to him that was still maintained by ATF was the documentation electronically retrieved during the search for records. Furthermore, ATF advised the plaintiff that the investigation mentioned in the documents he was receiving was destroyed according to ATF's records schedule.  Lastly, ATF informed the plaintiff that since his request had been partially denied and deletions were made, he had the right to request an administrative appeal by following the instructions in the enclosed forms.  Id. ¶ 9, and Exhibit D.

86. Redactions were made in the release to the plaintiff pursuant to Exemptions (b)(2) and (b)(7)(C) of the FOIA.  Id. ¶ 10.

-26-

87. On December 9, 2005, OIP received a FOIA appeal dated November 14, 2005, in which the plaintiff indicated that ATF had released certain records and withheld some by claiming certain exemptions, and that he believed ATF's response to his FOIA request was arbitrary and/or capricious.  Id. ¶ 16, and Exhibit E.

88. By letter dated December 19, 2005, OIP acknowledged receipt of plaintiff's appeal dated November 14, 2005, and informed him that a response to his appeal would be forthcoming. Id. ¶ 17, and Exhibit F.

**XIII.    Tax Division (TAX)**

89. By letter dated June 11, 2005, plaintiff requested all documents on himself.  A search of the indices to the files of the Tax Division was conducted, and five (5) files responsive to the request were located.  Declaration of J. Brian Ferrel ("Ferrel Decl.") ¶ 3.

90. In response to the request, plaintiff was advised on September 6, 2005, that thirty-one (31) documents were being released in edited form; and seven (7) documents were being withheld in their entirety.  Id. ¶ 3.

91. Tax withheld portions of the 31 responsive documents pursuant to 5 U.S.C. § 552 (b)(3), in conjunction with 26 U.S.C. § 6103, § 6103(a), (b)(3), in conjunction with Fed. R. Crim. P. 6(e), (b)(5), in conjunction with the attorney work product and deliberative privileges,(b)(7)(C), (b)(7)(E); and seven (7)

-27-

documents were withheld in their entirety pursuant to the same exemptions.  See Ferrel Decl.

## XIV. Internal Revenue Service (IRS)

92. The IRS declarant was assigned the plaintiff's case on January 31, 2006.  In an effort properly to respond to plaintiff's complaint, the declarant contacted the Fresno Appeals Office and spoke with Margaret Field, Supervisory Appeals Officer on January 31, 2006.  She performed a search of the Service's Electronic Disclosure Information Management Systems (EDIMS) and Appeals Centralized Database System (ACDS), but was unable to locate any records of requests made by the plaintiff. Declaration of Joel D. McMahan ("McMahan Decl.") ¶¶ 2,3.

93. On February 2, 2006, William R. Taylor, Supervisory Special Agent based in the Dallas Field Office, performed a search of the Criminal Investigation Management Information System (CIMIS).  The search returned information concerning a criminal investigation involving the plaintiff that was investigated by Criminal Investigators Alan Fogel and James Riley located in New York.  Id. ¶ 4.

94. On that same day, Joel D. McMahan spoke with Cynthia J. Mills, Disclosure Officer based in Philadelphia, Pennsylvania. She was unable to locate an EDIMS case number for the plaintiff and ascertained that the original request had come through the District of Columbia Disclosure Office.  Id. ¶ 5.

95. The Mr. McMahan contacted Sharon Baker, Disclosure Specialist, and requested that she forward any information about

a FOIA request from the plaintiff.  Mr. McMahan received a copy
of the original request and the response sent to the plaintiff by
Sharon Baker.  A FOIA request dated June 11, 2005 was filed by
plaintiff.  Ms. Baker sent a response to the request on August 4,
2005 stating that plaintiff's FOIA request as not being honored
due to a lack of identification and failure to send it to the
appropriate office.  Id. ¶ 6, and Exhibits A,B.

96. The Mr. McMahan determined that the purported appeal was
received by the Austin Disclosure Office, and requested that the
Appeal letter and the Service's response be forwarded to his
attention.  Those documents were received from Paula Ward,
Disclosure Specialist from Austin, Texas on February 2, 2006.
Id. ¶ 7.

97.  The Mr. McMahan  reviewed the original FOIA request and
determined that, although sent to the wrong disclosure office,
the request was arguably valid.  He contacted Ms. Mills by email
on February 9, 2006, and informed her that he would be faxing the
FOIA request for expedited handling.  Mr. McMahan  suggested to
Ms. Mills that, in her effort to locate documents, she should
speak with Alan Fogel or James Riley, the aforementioned Criminal
Investigators.  Id. ¶ 8.

98. Ms. Mills assigned the case and took over directing the
investigation, Mr. McMahan took no further action, other than to
be informed of the progress of the search.  The case was re-
assigned to Krista L. Piersol, General Attorney (Disclosure and
Privacy Law) on or about February 21, 2006.  Id. ¶ 9.

99. At the request of Cynthia J. Mills, Disclosure Officer for the Service, Alan S. Fogel reviewed the one box of documents relating to the criminal investigation of plaintiff which were found during a search being conducted in response to plaintiff's FOIA request.  Based upon a review, the Mr. Fogel correctly determined that the documents are Grand Jury material protected from disclosure by FOIA Exemption (b)(3) in conjunction with Fed. R. Crim. P. 6(e).  Declaration of Alan S. Fogel ("Fogel Decl.") ¶ 4.

100. Cynthia J. Mills further requested that Mr. Fogel attempt to obtain documents that may have been obtained during a prior investigation of the plaintiff performed by Special Agent James Riley, who has retired from the Service.  Mr. Fogel spoke with the New York Field Office Management and Program Assistant, Jon Douglass on March 9, 2006.  Mr. Douglass is responsible for archiving and tracking closed cases.  The Mr. Fogel asked Mr. Douglass if he could locate any archived boxes of documents from a prior case. Mr. Douglass, informed Mr. Fogel several days later that he did not find any documents related to the plaintiff. Several weeks later, Mr. Fogel asked Mr. Douglass to run another check to confirm that those documents either, did not exist or had been destroyed.  Mr. Douglass confirmed there were no archived files concerning the plaintiff.  Id. ¶ 6.

**XV.  Summary.**

101.  Documents and portions of documents withheld by the USNCB (Interpol), ATF, BOP, Criminal Division, Tax, DEA, EOUSA,

-30-

USMS, USPS, and IRS were properly withheld based on the Freedom of Information Act exemptions currently relied upon by those agencies and as set forth in the declarations (including attachments) relied upon by the agencies.  See Declarations of Dorothy S. Beaty, Freedom of Information and Privacy Acts Specialist, Interpol - U.S. National Central Bureau (Beaty Decl.), Averill P. Graham, Chief, Disclosure Division, Bureau of Alcohol, Tobacco, Firearms and Explosives (Graham Decl.), Karen Summers, Paralegal Specialist, Federal Bureau of Prisons, South Central Regional Office (Summers Decl.), Kathy Hsu, Attorney, Criminal Division, Office of Enforcement Operations (Hsu Decl.), J. Brian Ferrel, Senior Division Counsel, Civil Trial Section, Eastern Region of the Tax Division (Ferrel Decl.), Leila I. Wassom, Paralegal Specialist, Office of the Chief Counsel, Administrative Law Section Drug Enforcement Administration (Wassom Decl.), John W. Kornmeier, Attorney Advisor, Executive Office for United States Attorneys (Kornmeier Decl.), William E. Bordley, Associate General Counsel and Freedom of Information/Privacy Act Officer, Office of General Counsel (Bordley Decl.), United States Marshals Service, Lynne Freeman, Information Disclosure Technician, Office of Counsel for the Postal Inspection Service (Freeman Decl.)

102.  Following a proper search by NSA, CIA, USSS and CBP, each of those agencies have demonstrated that they do not have any records responsive to plaintiff's FOIA requests.  See Declarations of Louis F. Giles, Director of Policy for the

National Security Agency (Giles Decl.), Scott A. Koch, Chief of
the Public Information Programs Division, Information Management
Services, Central Intelligence Agency (Koch Decl.), Mark
Sullivan, Deputy Director of the United States Secret Service,
Department of Homeland Security (Sullivan Decl.), Dorothy Pullo,
Supervisory Program Analyst, TECS/FOIA Customer Satisfaction
Unit, Office of Field Operations, United States Customs and
Border Protection (Pullo Decl.) and Shari Suzuki, Chief, FOIA
Appeals, Policy and Litigation Branch, Rulings and Disclosure Law
Division, Office of Regulations and Rulings, United States
Customs and Border Protection (Suzuki Decl.)

103. No further release of meaningful information can be
made from the documents responsive to Plaintiff's FOIA requests
without disclosing information protected from disclosure under
the exemptions described in the declarations. See Wassom Decl.
¶¶ 75-84, Bordley Decl. ¶ 12, Ferrel Decl. ¶¶ 17,22, Fogel Decl.
¶ 4, Hsu Decl. ¶ 29, Freeman Decl. ¶ 14, Beaty Decl. ¶ 10,
Summers Decl. ¶ 34, Graham Decl. ¶ 9, Kornmeier Decl. ¶¶ 20,21,36

and <u>Vaughn</u> Indexes submitted therewith.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, DC Bar #451058
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

_____I HEREBY CERTIFY that service of the foregoing Defendants'
Motion To Dismiss or, in the Alternative, Summary Judgment, and a
proposed Order has been made by mailing copies thereof to:

ANTHONY GRAZIANO
# 48743-080
FDC Miami
Federal Detention Center
P.O. Box 019120
Miami, FL 33101

ANTHONY GRAZIANO
# 48743-080
Federal Correctional Complex
P.O. Box 3000 (Medium)
Forrest City, Arkansas 72336

on the 8th day of June, 2006.

                                        _____
                                        _____
                                        W. MARK NEBEKER, D.C. Bar #396739
                                        Assistant United States Attorney
                                        Civil Division
                                        555 4th Street, N.W.
                                        Washington, D.C.  20530
                                        (202) 514-7230